**In re Charles Francis McPHERSON, Jr., and Sherri Lee McPherson, Debtors.**

**Herbert L. Beskin, Chapter 13 trustee,**

**v.**

**Charles Francis McPherson, Jr., and Sherri Lee McPherson, Debtors.**

No. 06–60243–13.

United States Bankruptcy Court, W.D. Virginia, Lynchburg Division.

July 31, 2006.

---

**40**

Herbert L. Beskin, for the Chapter 13 trustee.

H. David Cox, Cox Law Group, Lynchburg, Va., for the debtors.

### MEMORANDUM

**WILLIAM E. ANDERSON,**
Bankruptcy Judge.

This matter comes before the Court on the chapter 13 trustee's objection to the plan of reorganization filed by Charles Francis McPherson, Jr., and Sherri Lee McPherson ("the Debtors") on the grounds that it does not provide for the payment of all of the Debtors' projected disposable income during the five-year pendency of their proposed plan of reorganization as required by 11 U.S.C. § 1325(b)[1]. Specifically, the trustee objects to the Debtors' calculation under 11 U.S.C. § 707(b)(2)(A)(iii)[2] of the amount of a deduction made from their income based on a

secured claim. The Debtors oppose the motion to dismiss and assert that they have correctly interpreted Section 707(b)(2)(A)(iii).

This Court has jurisdiction over this matter. 28 U.S.C. § 1334(a) & 157(a). This proceeding is a core proceeding. 28 U.S.C. § 157(b)(2)(A) & (L). This Court may enter a final order. This memorandum shall constitute the Court's findings of fact and conclusions of law as directed by Fed.R.Civ.P. 52, which is made applicable in this proceeding by Fed. R. Bankr.P. 7052.

### FACTS

*The Debtors' Schedules.* On February 28, 2006, the Debtors filed a chapter 13 petition. On March 15, 2006, they filed their schedules and a plan of reorganization. On their Schedule I, the Debtors scheduled gross monthly income in the amount of $5,604.24 and net monthly income in the amount of $4,338.25. On their Schedule J, the Debtors scheduled monthly expenses of $4,088.00. The Debtors' gross annual income according to their Schedule I is $67,250.88. The Debtors have one dependent.

The Debtors scheduled creditor Best Buy Co. Inc., ("Best Buy") on Schedule D as a secured creditor with a total claim in the amount of $2,216.00. They valued a computer ("the Collateral") securing the claim at $100.00. They scheduled the Best Buy claim as a secured claim in the amount of $100.00 and scheduled the balance of the claim, $2,116.00, as unsecured. As of the date of petition, the Debtors were obligated under a contract ("the Best Buy Contract") to make 24 additional

---

1. Section 1325(b) was revised and became effective on October 17, 2005, as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). *See* Pub.L. No. 109–8, 119 Stat. 23 (2005).

2. Section 1325(b) incorporates Section 707(b)(2)(A) & (B) into the calculation. Section 707(b) was also revised by BAPCPA.

monthly payments to Best Buy in the amount of $169.00 each. The total amount of the 24 payments due under the contract was $4,056.00.

*The Debtors' Form B22C.* The Debtors also filed a "Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income", Official Form B22C ("Form B22C"), as required by Fed. R. Bankr.P. 1007(b)(6) [3]. Their Form B22C indicates that their total monthly income is $5,780.00, or $69,360.00 [4] per year. This amount is more than $63,177.00, the median income for a family of three in Virginia.

At line 47 of Form B22C, a debtor is instructed to provide "the total of all amounts contractually due to each Secured Creditor in the 60 months following" [5] the date the petition is filed. The Debtors listed the monthly payment attributable to the secured portion of the Best Buy claim at $67.60. The Debtors calculated this amount by dividing the total amount of all payments due to Best Buy, $4,056.00, by 60.

*The Debtors' Proposed Plan.* The proposed plan provides for payments of $60.00 per week for a period of 60 months [6] (260 weeks) for a payment total of $15,600.00. It provides that the Debtors will pay Best Buy six monthly payments in the amount of $18.20 each on account of the secured portion of its claim ($100.00) with interest accruing at 7% per annum. The total proposed payment to Best Buy on account of the secured portion of its claim is $109.20. The plan also provides that the Debtors will pay Best Buy its pro rata share of the total payments to be made to unsecured creditors. This will amount to 27% of the unsecured portion of Best Buy's claim, or approximately $571.32. The plan provides that the Debtors will pay a total of $680.52 to Best Buy.

In calculating the amount of their disposable income to be distributed to unsecured creditors under the plan, the Debtors deduct $67.00 per month from their net income on account of the secured portion of the Best Buy claim. They calculate this amount by dividing the total amount of all remaining payments due under the Best Buy Contract, $4,056.00, by the number of months in the proposed plan, 60.

*The Objection of the Chapter 13 Trustee.* The trustee objects to the Debtors' proposed plan. He argues that they are only entitled to deduct the amount that they propose to actually pay Best Buy on account of the secured portion of its claim when calculating their disposable income.

---

**3.** To implement BAPCPA, the Judicial Conference approved nine new Official Forms and amendments to thirty-three existing Forms. One of the new forms is Form B22C.

**4.** This amount obviously differs from the amount of gross annual income scheduled by the Debtors on their Schedule I. The difference lies in the definitions of the income to be used for each form. In Form B22C, a debtor is to enter his or her "current monthly income", which is defined as the "average monthly income ... that the debtor receives ... derived during the 6–month period ending on the last day of the calendar month immediately preceding the date' of petition." *See* 11 U.S.C. § 101(10A). A debtor's sched-

uled income is traditionally calculated in a manner designed to most accurately reflect the debtor's income on the date of petition. Examples of the methods used to calculate such income include one-twelfth of the debtor's previous annual income or monthly anticipated income going forward.

**5.** This language parrots that of Clause 707(b)(2)(A)(iii).

**6.** Because the Debtors' gross annual income is greater that the median annual income for a family of three in Virginia, the Debtors are required to make payments for five years. *See* 11 U.S.C. § 1325(b)(4). *Also see* discussion, *infra.*

The trustee argues that the expense amount attributable to the secured claim in this case should be $1.82 per month. He calculates this amount by dividing the total amount of all proposed plan payments to Best Buy on account of its secured claim, $109.20, by the number of months in the proposed plan, 60.

## DISCUSSION

The chapter 13 trustee objects to confirmation of the Debtors' plan on the grounds that it does not provide that all of the Debtors' projected disposable income received during the pendency of the plan will be applied to make payments to unsecured creditors. The objection is based on 11 U.S.C. § 1325(b)(1)-(3) [7], which provides the calculation method that an above-medi-

an income debtor must use to determine the minimum monthly amount that he or she must pay unsecured creditors under a proposed plan. The issue is the method to be used in calculating the amount of the deduction to be made from income on account of secured debt in a chapter 13 case when calculating the disposable income that is to be paid to unsecured creditors. Specifically, the trustee argues that the Debtors have deducted more than the permitted amount on the basis of the secured portion of the Best Buy claim.

*The Chapter 13 Disposable Income Test for Above–Median Income Debtors.* If the chapter 13 trustee objects to a plan, the Court may not confirm that plan unless (1) the plan provides for the payment of each unsecured claim in full or (2) the plan

---

7. Section 1325(b)(1)-(3) provides:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—
(A)(1) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and

(ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4))) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.
(3) Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than—
(A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
(B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
(C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4.

provides that all of the debtor's "projected disposable income" to be received during the pendency of the plan will be applied to make payments to the unsecured creditors. 11 U.S.C. § 1325(b)(1).

"Projected disposable income" is not defined in the Bankruptcy Code. "Disposable income" means the "current monthly income" received by the debtor less "amounts reasonably necessary to be expended for support" of the debtor and his or her dependents. 11 U.S.C. § 1325(b)(2) [8]. "Current monthly income" is defined as the "average monthly income . . . that the debtor receives . . . during the 6–month period ending on the last day of the calendar month immediately preceding the date" of petition. 11 U.S.C. § 101(10A) [9]. The "amounts reasonable necessary to be expended for support" under Subsection 1325(b)(2) are to be determined in accordance with 11 U.S.C. § 707(b)(2)(A) & (B) if the debtor's "current monthly income", when multiplied times twelve, is greater than the median

annual income for a family of similar size in the debtor's state, which is true in this case [10]. 11 U.S.C. § 1325(b)(3).

■ To summarize, all of a debtor's "projected disposable income" to be received during the pendency of the plan must be applied to make payments to the unsecured creditors. "Disposable income" means a debtor's "current monthly income" less "amounts reasonably necessary to be expended for support" of the debtor and any dependents. The word "projected" in the phrase "projected disposable income" modifies each of the component parts of "disposable income", that is, it modifies "current monthly income" and it modifies "amounts reasonably necessary to be expended for support". "Projected disposable income", then, means the "projected current monthly income" less "projected amounts reasonably necessary to be expended for support" where "reasonably necessary to be expended for support" is

---

8. A debtor is also allowed deductions for postpetition domestic support obligations, charitable contributions, and business expenses. *See* Subparagraphs 1325(b)(2)(A) & (B). Those deductions are not relevant to this discussion.

9. Section 101(10A) provides
   The term "current monthly income"—
   (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6–month period ending on—
   (I) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
   (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
   (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regu-

lar basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

10. The median family income for a family of three in Virginia is $63,177.00. The Debtors list gross monthly income of $5,780.00 on line 47 of their Official Form B22C. Their annualized "current monthly income" is $69,360.00, an amount greater than the median income for families of the same size in Virginia. Their allowed expenses are to be determined in accordance with 11 U.S.C. § 707(b)(2)(A) & (B).

to be determined in accordance with Subparagraphs 707(b)(2)(A) & (B).

The Debtors' projected "current monthly income" is not in dispute. We are only concerned with the effect of the Best Buy claim on the calculation of the Debtors' projected disposable income. Consequently, we focus on the phrase "projected ... amounts reasonably necessary to be expended for support". In that phrase, the word "amounts" is modified by three terms: (1) the adjective "projected"; (2) the adjective phrase "reasonably necessary for ... support"; and (3) the infinitive phrase "to be expended". The Court must give meaning and import to each of these three terms. *See Negonsott v. Samuels,* 507 U.S. 99, 106, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993).

■ All of these three modifying terms indicate that the deductions in question concern amounts that will be paid in the future. First, we consider the effect of the word "projected". One Court has considered the word "projected" when examining the meaning of "projected disposable income" in the context of Section 1325(b). *See In re Jass,* 340 B.R. 411 (Bankr. D.Utah 2006) [11]. Although the Court was addressing the modifying effect of the word "projected" on the phrase "current monthly income", its observation concerning the meaning of "projected" in the context of Section 1325(b) is relevant.

> ... The word "projected" means "[t]o calculate, estimate, or predict (something in the future), based on present data or trends." Thus, the word "projected" is future-oriented.

*Jass,* 340 B.R. at 415 (Quoting The Am. Heritage College Dictionary, 1115 (4th ed.2002)). The amounts to be considered are future-oriented, that is, they are amounts that arise in the future. The use of the word "projected" to modify "disposable income" indicates that amounts in question are amounts that will arise in the future.

■ The phrase "reasonably necessary ... for support" indicates that the amounts, and the payment of the amounts, must be reasonably necessary for the support of the debtor and any dependent. Payments that a debtor does not propose to make during the pendency of the plan and that a debtor is not required to make

11. In *Jass,* the issue was whether the debtors were required to use their current monthly income as their monthly income when calculating their disposable income for purposes of a chapter 13 plan. The debtors' current monthly income annualized was $143,403.96. Using Form B22C, the debtors calculated their disposable income at $3,625.63 per month. They proposed to pay their unsecured creditors $790.00 per month.

The debtors asserted that the changes under the BAPCPA do not require them to pay the unsecured creditors the amount resulting from their Form B22C so long as they could show that the income and expenses reported on the Form B22C are inadequate representations of their future budget. They argued that the word "projected" in Section 1325(b)(1) modifies the definition of "disposable income" allowing them to disregard their "currently monthly income" if that amount would

not result in projected income. The Court agreed holding that "... section 1325(b)(1)(B)'s requirement that plan propose to pay 'projected disposable income' means that the number resulting from Form B22C is a starting point for the Court's inquiry only." *In re Jass,* 340 B.R. 411, 415 (Bankr.D.Utah 2006). The Court noted that it was bound to give effect to the future orientation of the word "projected". The Court concluded that the term "disposable income" is oriented in historical numbers and that Congress must have intended Courts to consider both future and historical information when it modified that term with the worth "projected". *Jass,* 340 B.R. at 415–416. The Court held that a debtor must propose to pay unsecured creditors the number resulting from Form B22C unless the debtor could show that this number did not adequately represent the debtor's budget projected into the future. *Id.*

under the plan cannot be said to be reasonably necessary for the support of that debtor. Thus any deductions from income based on the "amounts" in question must be payments that will be made pursuant to the confirmed plan of reorganization [12].

■ The third modifying phrase, "to be expended", also indicates that the amounts to be deducted are amounts that will be paid in the future. To "expend" means to "put out or lay out". Am. Heritage Dictionary, 462 (1976). To expend amounts of money, then, means to pay out money. Money that is "to be expended" is money that is to be paid in the future. An amount, the payment of which is never contemplated, cannot be an amount that is to be paid in the future.

The "amounts" referred to in Paragraph 1325(b)(2) are amounts that a debtor will make in the future as provided in the debtor's plan. They are not amounts that are provided for in pre-petition contracts that give rise to both secured and unsecured claims.

At least one Court has considered this issue. *See In re Renicker*, 342 B.R. 304 (Bankr.W.D.Mo.2006). The facts in *Renicker* are on all fours in all relevant respects with those herein. In *Renicker* the debtors surrendered the collateral securing a claim. The Court held that the debtors could not use their historic mortgage expense to reduce their monthly income to avoid paying additional amounts to unsecured creditors because they no longer owned the home that served as collateral for the mortgage. In *Renicker*, a secured claim was effectively bifurcated into

a secured claim in the amount of $00.00 and a potential unsecured claim (based on any deficiency). In the case at bar, the Best Buy claim is being bifurcated into a secured claim in the amount of $100.00 and an unsecured claim in an amount certain, $2,116.00.

The critical fact in *Renicker* and in the case at bar is the same. In each case, a secured claim is bifurcated for purposes of treatment under the chapter 13 plan. The necessary conclusion is also the same. Any deduction from income based on a secured claim that no longer exists may not be allowed.

*Comparing the Chapter 7 Means Test and the Chapter 13 Projected Disposable Income Test.* A different result is not compelled by the directive in section 1325(b)(3) that the "amounts reasonably necessary to be expended" are to be determined in accordance with Section 707(b)(2)(A) & (B). Paragraph 707(b)(1) provides that the Court may convert or dismiss a chapter 7 case if granting relief under chapter 7 would constitute an abuse of the provisions of that chapter. Paragraph 707(b)(2) provides a rebuttable threshold test ("the Means Test") to determine whether granting relief would be an abuse of the provisions of chapter 7 case. Under the Means Test, an assumption of abuse arises if a debtor's disposable income, as calculated under Paragraph 707(b)(2), is greater than certain statutory amounts.

The objective of the Means Test in Section 707(b), then, is to roughly estimate whether a debtor has sufficient disposable income to fund a chapter 13 plan, that is,

12. This is not to say that the deductions for monthly expenses and priority claims described in Section 707(b) are not to be used in chapter 13. The treatment of secured claims sometimes differs in chapter 7 and chapter 13, while unsecured claims and monthly expenses are treated identically. In chapter 7, a debtor may not reduce a creditor's secured claim to the judicially determined value of the collateral. *Dewsnup v. Timm (In re Dewsnup)*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). In chapter 13, however, certain secured claims may be bifurcated. *See* 11 U.S.C. § 1325(a)(5).

to estimate the amount of residual income that the debtor has each month after deducting (1) allowed monthly costs of living; (2) monthly payment toward the retirement of accrued debts that give rise to priority claims; and (3) monthly payments toward the retirement of accrued secured debt.[13] *See* Clauses 707(b)(2)(A)(ii)-(iv).

■ Clause 707(b)(2)(A)(ii) enumerates certain monthly expenses [14] that may be deducted from current monthly income. Clause 707(b)(2)(A)(iv) permits the debtor to deduct expenses for payments on priority claims. Clause 707(b)(2)(A)(iii) [15] allows the debtor to deduct "monthly payments [arising] on account of secured debts" and prescribes the method to be used in calculating that amount. In relevant part Clause 707(b)(2)(A)(iii) states that "[t]he debtor's average monthly payments on account of secured debts shall be calculated as ... the total of all amounts scheduled

as contractually due to secured creditors in each month of the 60 months following the date of petition... divided by 60."

■ The term "contractually due", however, does not carry the same meaning in a chapter 13 case as in a chapter 7 case. The chapter 13 plan constitutes a new agreement between the debtor and each secured creditor. A debtor's obligations under the plan are substituted for his or her obligations under the original contract with each secured creditor.

This Court has previously recognized that once a plan is confirmed, and the property of the estate has vested in the debtor, the secured creditor's rights and interests are then defined strictly by the provisions of the plan. *In re Johnson*, 63 B.R. 550 (Bankr.D.Colo.1986). That holding is clearly in accordance with the explicit provisions of 11 U.S.C. § 1327(a)

13. The Means Test is derived from the tautological fact that the distribution of a person's net income may be divided into four categories: (1) Payment of expenses that arise during the month; (2) Payment toward the retirement of accrued unsecured debt that would give rise to general unsecured claims in a bankruptcy proceeding; (3) Payment toward the retirement of accrued unsecured debt that would give rise to priority unsecured claims in a bankruptcy proceeding; and (4) Payment toward debt that is secured by property. Thus, category (2), payments made toward unsecured debt, may be calculated as a residual by subtracting the total of categories (1), (3), and (4) from the debtor's net income after taxes.

14. Clause 707(b)(2)(A)(ii) allows reductions for expenses under the National IRS Standard (food, clothing, household supplies, personal care, and miscellaneous) and Local IRS Standards (housing and utilities, non-mortgage home expense, and transportation) as well as health insurance premiums, disability insurance premiums, and contributions to a health savings account.

15. Section 707(b)(2)(A)(iii) provides:

(2)(A) (i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or

(II) $10,000.

. . .

(iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—

(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts; divided by 60.

*In other words, the plan itself has the effect of making a new agreement between the debtor and the creditor with a new obligation to be paid in the manner provided for by the terms of the plan. See, Matter of Winterfeldt,* 28 B.R. 486 (Bankr.E.D.Wis.1983); *In re Tucker,* 35 B.R. 35 (Bankr.M.D.Tenn.1983) and cases cited therein; *In re Hebert,* 61 B.R. 44 (Bankr.W.D.La.1986).

*In re Nicholson,* 70 B.R. 398, 400 (Bankr. D.Colo.1987) (Emphasis added.).

The term "amounts contractually due", as used in the context of this chapter 13 case, cannot refer to amounts due under the Best Buy Contract because there are no amounts contractually due in the future based on that contract. The Debtors' only obligation to Best Buy on account of the secured portion of its claim is to make six payments in the amount of $18.20 each. It is those payments that form the basis for the deduction from income. It is the total amount of those payments, $109.20, divided by 60, that may be deducted from the Debtors' income on account of the secured portion of the Best Buy claim.

*The Debtors' Arguments.* The Debtors' arguments are based solely on Section 707(b)(2), line 47 of Form B22C and opinions interpreting them. To focus only on Section 707(b)(2), would be to ignore the language of Section 1325(b)(1)-(3), something this Court may not do. *See BFP v. Resolution Trust Corp.,* 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) ("... Congress acts intentionally and purposefully when it includes particular language in one section but omits it in another."). The modifying terms "projected", "reasonably necessary", and "to be expended", must be given some import in chapter 13.

The language on line 47 of Form B22C parrots the language in Section 707(b)(2). As such, the language on line 47 is subject to all of the analysis that is applicable to Section 707(b)(2). Furthermore, Form B22C is only a form. It carries the weight of neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure. Indeed, it is provided in the Bankruptcy Rules that the Forms shall be altered as is appropriate. *See* Fed. R. Bankr.P. 9009. ("The Official Forms ... shall be observed and used with alterations as may be appropriate. Forms may be combined and their contents rearranged to permit economies in their use.")

The Debtors rely on the opinion in *In re Walker,* Case No. 05–15010, 2006 WL 1314125 (Bankr.N.D.Ga. May 1, 2006). In *Walker,* the debtors sought to deduct their average mortgage payment over the 60-month post-petition period in determining their disposable income for purposes of the chapter 7 Means Test even though they intended to surrender their residence. The Court examined the language in Section 707(b)(2)(A)(iii) and concluded that the reference to payments "scheduled as contractually due" necessarily implied that the debtors could deduct their mortgage payments from their current monthly income even though they would never make those payments. The reasoning in *Walker,* however, only applies to a chapter 7 case. Accordingly, that opinion gives no guidance regarding the interpretation of the provisions of Section 1325(b).

The Debtors also cite *In re Barr,* 341 B.R. 181 (Bankr.M.D.N.C.2006) in support of their position. In *Barr,* the chapter 13 debtor's annual income exceed that of the median for a family of similar size in her state. The debtor's expenses, calculated in accordance with Paragraph 707(b)(2), exceeded her Current Monthly Income by $76.47. Her schedules I and J, however, indicated that she had net disposable income of at least $2,038.00 before deductions for payments to secured creditors.

After payments owed to secured creditors, she still had $513.00 in unallocated disposable income that she could have paid to unsecured creditors. The chapter 13 trustee objected to the debtor's plan under Paragraph 1325(a)(3) on the grounds that it was not filed in good faith. The Court concluded that whether the proposed plan commits all of the debtor's disposable income must be determined under section 1325(b) rather than as an element of good faith under Section 1325(a)(3).

While the Court did hold that the "use of 'shall' in section 1325(b)(3) is mandatory and leaves no discretion with respect to the [amounts] that are to be deducted in arriving at disposable income", *Barr* at 185, the Court did not consider the language in Paragraphs 1325(b)(1) & (2). More specifically, the Court never considered the effect of the terms "projected", "reasonably necessary . . . for support", or "to be expended" on the word "amounts". Furthermore, there is no indication that the debtor in *Barr* had either surrendered property serving as collateral for a secured claim as in *Renicker* or had bifurcated a secured claim based on the valuation of property serving as collateral for that claim as in this case. The opinion does not provide any insight into the method that a debtor, a trustee, or a Court should use when calculating the amount that a debtor may deduct from his or her income on account of secured debts under Clause 707(b)(2)(A)(iii).

The Debtors' calculation focuses on the language of Section 707(b)(A)(iii) and the instructions in *Walker, supra.* In reducing their income on account of the Best Buy claim, they take the total of all post-petition payments due under the contract, $4,056.00 and divide by 60. This approach, however, ignores the language in Section 1325(b)(1)-(3) that modifies the instructions in Section 707(b) concerning secured claims. The Debtors may only reduce their income by $1.82 per month on account of the secured debt arising from the Best Buy claim.

### CONCLUSION

The Debtors' gross income is above the state median gross income for a family of the same size, the chapter 13 trustee objects to the plan, and the plan does not provide for payment in full to unsecured creditors. Consequently, this Court may not confirm the Debtors' plan unless it provides that all of the Debtor's "projected disposable income" will be paid to unsecured creditors. The plan does not so provide. The objection of the chapter 13 trustee will be sustained without prejudice to the Debtors filing an amended plan within 14 days from the date of the entry of the accompanying order on docket.

An appropriate order shall issue.