In the matter of John **LIVERMAN** and Lynda K. Liverman, Debtors.

No. 07–20590/JHW.

United States Bankruptcy Court, D. New Jersey.

March 5, 2008.

S. Daniel Hutchison, Esq., Woodbury, NJ, for the Debtors.

Donna L. Wenzel, Esq., Office of the Chapter 13 Standing Trustee, Cherry Hill, NJ, for the Chapter 13 Trustee.

Robert H. Johnson, Esq., Yablonsky & Associates, LLC, Wayne, NJ, for eCAST Settlement Corporation.

### OPINION ON OBJECTION TO CONFIRMATION

JUDITH H. WIZMUR, Chief Judge.

The Chapter 13 trustee and an unsecured creditor, eCAST Settlement Corporation, object to confirmation of the debtors' proposed Chapter 13 plan. They challenge as insufficient the plan payments proposed by the debtors. As well, they challenge the validity of the debtors' Form 22C disposable income calculation. Because the debtors have overcome the challenges to the Form 22C calculations and have devoted their projected disposable income to their Chapter 13 plan, the objections are overruled and the plan may be confirmed.

### FACTS

John and Lynda K. Liverman filed a voluntary petition under Chapter 13 of the Bankruptcy Code on July 27, 2007. The debtors' Schedule I reflects that both debtors are currently employed. Lynda Liverman earns a gross monthly salary of $5,470.68. John Liverman was unemployed for the six-month period leading up to the filing, but obtained employment a week before the filing, and is now earning a gross monthly salary of $1,248. After payroll deductions, the debtors' net monthly income is $4,950.22. Debtors' Schedule J indicates total average monthly expenses of $4,600, for a monthly net income of $350.22. Debtors' Chapter 13 plan proposes to pay $350 per month for 36 months.

On their Second Amended "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income", also known as Form 22C [1], the debtors listed current monthly income of $5,705.18, representing Lynda Liverman's average monthly income during the six-months prior to filing. The debtors' calculated their Form 22C expenses at $6,511.84, resulting in a monthly deficit of $806.66.[2]

---

1. Form 22C, or the "means test" form, collects the information needed to determine "disposable income" under § 1325(b)(2).

2. The original and First Amended Forms 22C filed by the debtors each reflected the same current monthly income of $5,705.18, but adjusted the total expenses from $5,913.32 to $6,112.56. The deficit in monthly disposable income calculated on the original Form 22C was $208.14, and grew to $407.38 in the First Amended Form 22C.

eCAST Settlement Corporation, the assignee of Bank of America/FIA Card Services, formerly MBNA, Citibank USA NA, and GE Money Bank/Sam's Club, an unsecured creditor of the debtors, objects to the confirmation of the debtors' plan, asserting that the debtors' proposed plan fails to apply all of the debtors' projected disposable income to pay unsecured creditors. eCAST seeks to reduce the debtors' claimed Form 22C deductions by $803, the amount of the transportation ownership/lease expense deduction claimed by the debtors for their two wholly owned vehicles. As well, eCAST contends that in light of John Liverman's recent employment and the debtors' resulting additional income, which is not reflected on Form 22C, the proper calculation of the debtors' "projected disposable income" would be to start with the debtors' Schedule I gross income of $6,718.68 and to reduce it by the approved deductions calculated on Form 22C. Applied to the debtors' Second Amended Form 22C calculation, this approach would impose upon the debtors a projected disposable income of $1,009.84 (gross Schedule I income of $6,718.68 minus "means test" expenses of $5,708.84).[3] eCAST contends that the debtors must pay this amount per month for 60 months.

The Chapter 13 Standing Trustee supports eCAST's objection to confirmation. The trustee also questions the increase of approximately $600 in expenses claimed by the debtors from their original Form 22C to the current second amended form.

## DISCUSSION

I.  *11 U.S.C. § 1325(b)(1).*

Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), if the trustee or an allowed unsecured creditor objects to confirmation of the debtors' plan, the plan cannot be confirmed unless that claim is to be paid in full, or the plan "provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan."[4]  11 U.S.C. § 1325(b)(1)(B). Our focus here is on the meaning of the debtors' "projected disposable income" to be received within "the applicable commitment period."

### A.  *Projected Disposable Income.*

■ The phrase "projected disposable income" is not defined under the Bankruptcy Code.[5] *In re Brady*, 361 B.R. 765,

---

**3.**  eCAST calculates the debtors' Form 22C expenses ($5,708.84) by disallowing the transportation ownership allowance for the debtors' vehicles ($803) and deducting that amount from the debtors' Second Amended Form 22C expenses ($6,511.84). eCAST does not take into account other expense adjustments, discussed *infra*.

**4.**  Section 1325(b)(1) provides:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan-

(A) the value of the property to be distributed under the plan on account of such

claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1).

**5.**  The phrase "projected disposable income" appears without definition in five other subsections of the Code including, 11 U.S.C. §§ 1129(a)(15)(B), 1222(a)(4), 1225(b)(1)(B), 1225(b)(1)(C) and 1322(a)(4). *See In re Pak*, 378 B.R. 257, 264 n. 7 (9th Cir. BAP 2007); *In re Slusher*, 359 B.R. 290, 297 (Bankr.

771 (Bankr.D.N.J.2007). Prior to the enactment of BAPCPA, the "projected disposable income" of the debtor for purposes of section 1325(b)(1) was calculated by "utiliz[ing] the debtors' income and reasonable expenses as listed on Schedules I and J to determine the debtors' disposable income. That amount would be projected forward by multiplying it times the number of months in the debtors' plan, with flexibility to accommodate for 'virtually certain' changes, and would be dedicated to the debtors' plan." *Id.* at 769.[6]

While the BAPCPA amendments to the Bankruptcy Code did not change the phrase "projected disposable income" in section 1325(b)(1), the legislation amended the definition of the term "disposable income" for purposes of the subsection. Income is now calculated as a historical average, and expenses are determined by a standardized formula. "Disposable income" is now defined to mean the "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . . and for charitable contributions." 11 U.S.C. § 1325(b)(2).[7] "Current monthly income" ("CMI"), defined in 11 U.S.C. § 101(10A), requires a determination of the debtors' income from all sources, with limited exceptions, averaged over the 6 month period immediately prior to the debtors' filing.[8] If the debtors' CMI is

---

D.Nev.2007). Only section 1129(a)(15)(B) refers back to the definition of "disposable income" in section 1325(b)(2). *Id.*

**6.** Pre–BAPCPA, where an objection was filed, the plan could not be confirmed unless the debtor paid all claims in full, or the plan provided that "all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan." 11 U.S.C. § 1325(b)(1)(B) (2005). "Disposable income" was defined as that "income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2) (2005).

**7.** Section 1325(b)(2) provides:
(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—
(A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and

(ii) for charitable contributions (that meet the definition of 'charitable contribution' under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4))) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.
11 U.S.C. § 1325(b)(2).

**8.** Under section 101(10A), "current monthly income":
(A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6–month period ending on—
(i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
(ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
(B) includes any amount paid by any entity other than the debtor (or in a joint case the

greater than the median family income of the applicable state, than the "amounts reasonably necessary to be expended [by the debtors] . . . shall be determined in accordance with such paragraphs (A) and (B) of section 707(b)(2)," [9] the so-called "means test" expenses. 11 U.S.C. § 1325(b)(3). The deductible expenses under subparagraph (A) and (B) of section 707(b)(2) are based upon the national and local standards for certain expenses as regulated by the Internal Revenue Service, plus the debtor's actual expenses for specific categories of expenses. *In re Brady*, 361 B.R. at 772.

Here, because the debtors' CMI is greater than the median family income of like size in New Jersey, the debtors' disposable income is determined by subtracting means test expenses from their CMI. As scheduled, the debtors' CMI is $5,705.18. Subtracting means test expenses of $6,511.84 produces a negative disposable income of $806.66. Utilizing the debtors' calculations, unsecured creditors would not be entitled to receive a dividend. *See In re Brady*, 361 B.R. at 772–73. With the adjustments to the means test expenses, discussed *infra*, including the disallowance of the debtors'

transportation ownership expense, the debtors will have "disposable income", as that term is defined in section 1325(b)(2), of $122.96.

As noted above, where the trustee or an unsecured creditor objects to the confirmation of the debtors' plan, the debtors must direct their "projected disposable income" to unsecured creditors. "[T]he addition of the term 'projected' to 'disposable income' in § 1325(b)(1)(B) differentiates it from 'disposable income' as defined in § 1325(b)(2)." *In re Pak*, 378 B.R. 257, 264 (9th Cir. BAP 2007). If the debtors had no significant changes in their income or expenses at the time of the confirmation of the Chapter 13 plan, the formulaic calculation required under § 1325(b)(2) to determine "disposable income" would represent the debtors' "projected disposable income". *In re Brady*, 361 B.R. at 772 (Where there are no changed circumstances, "projected" means that the debtors' disposable income, as calculated under the statute, which is projected to be received over the course of the applicable commitment period, must be dedicated to the payment of the unsecured creditors.). *See also, In re Lanning*, 380 B.R. 17, 23

debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.
11 U.S.C. § 101(10A).

**9.** Section 1325(b)(3) provides that:
Amounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), shall

be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than–
(A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
(B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
(C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $575 per month for each individual in excess of 4.
11 U.S.C. § 1325(b)(3).

(10th Cir.BAP2007) (citing to *In re Kibbe,* 361 B.R. 302, 312 (1st Cir.BAP2007)). (Where the debtors' CMI in Form 22C "is substantially the same as the actual current income at the time of confirmation of the plan, less the Income Exclusions, the inquiry begins and ends with Form B22C."[10])

■ In contrast, where a substantial change in the debtors' actual ability to fund a plan is shown, the formulaic calculation of disposable income may be modified to "project" the reality of the debtors' income and expenses going forward. *See In re Lanning,* 380 B.R. 17, 24–25 (10th Cir. BAP 2007); *In re Pak,* 378 B.R. 257, 268 (9th Cir. BAP 2007). "[W]here the debtor's income at confirmation or as reasonably anticipated for the plan commitment period is materially different from the debtor's 'disposable income' as defined by § 1325(b)(2), the court must depart from the Form B22C calculation." *In re Kibbe,* 361 B.R. at 314–15. Because the debtor's disposable income is calculated historically, while the term "projected" is essentially forward-looking, *In re Pak,* 378 B.R. at 264–65, a change in the debtor's income going forward injects the term "projected" with an opportunity to incorporate the change in determining the confirmability of the debtor's plan. Consistent with this interpretation of the term "projected" is the § 1325(b)(1) requirement that "projected disposable income" be applied "as of the effective date of the plan," generally understood to mean the date of plan confirmation. *Id.* at 265. In light of the historical basis of the "disposable income" calculation, the phrase "as of the effective date of the plan" only makes sense if the debtors' actual current income

as of plan confirmation is considered in the application of the phrase "projected disposable income", where a significant change from the historical CMI calculation is demonstrated. *Id.* "If the determination of the debtor's 'projected disposable income to be received in the applicable commitment period' is to be made at the time of chapter 13 plan confirmation, which often occurs months after the petition date, it makes little sense to tie that determination exclusively to income information for the period of six months prior to the debtor's bankruptcy filing." *Id.* Put another way, the "disposable income" formula serves as a presumption that the prescribed calculation represents the amount that is projected to be paid through the Chapter 13 plan. *In re Slusher,* 359 B.R. 290, 297 (Bankr.D.Nev.2007) ("[I]f . . . Form B22C accurately represents the anticipated future income of the debtor, the court will likely use it as 'projected disposable income', in large part because, by hypothesis, there are no facts which could rebut the presumption.").

■ Here, the debtors' income as of the effective date of the plan has increased significantly from their CMI, which represents the debtors' average monthly income during the six months prior to filing. The debtors and the objectors agree that because the debtors' income has increased, a calculation of the debtors' "projected disposable income" may differ from the calculation of the debtors' "disposable income" derived from the section 1325(b)(2) formula. However, the debtors and the objectors do not agree on the manner in which "projected disposable income" should be calculated. The debtors reference Schedules I and J to reflect a net monthly

---

**10.** The form previously labeled as Form B22C was an interim form, which became Form 22C when the official form was adopted. Many opinions refer to the form as "B22C".

References in cited cases to either designation are interchangeable. *In re Lanning,* 380 B.R. 17, 19 n. 1 (10th Cir. BAP 2007)

income of $350, which they propose to commit to the plan. The objectors seek to deduct the debtors' means test expenses from the debtors' Schedule I gross income. This calculation would require the debtors to make a monthly plan payment of $1,009.84 ($6,718.68 minus $5,708.84).[11] That payment does not appear to be feasible. The debtors' actual income and expenses reflected in Schedules I and J have not been challenged by the objectors as inaccurate, unnecessary or unreasonable.

The objectors' proposal to calculate projected disposable income by utilizing the debtors' actual Schedule I income and deducting the means test expenses from that income cannot be sustained, because the statute itself does not support the proposal, and because the proposal produces an anomalous result. Section 1325(b)(2) defines "disposable income" as the debtors' CMI minus amounts reasonably necessary to be expended for the support of the debtors and their dependents. For above-median income debtors, section 1325(b)(3) requires that "amounts reasonably necessary to be expended" be determined in accordance with the means test expenses under § 707(b). The requirement in § 1325(b)(3) to use means test expenses is specifically limited by the phrase "under paragraph (2)", referring to § 1325(b)(2), which defines "disposable income".[12] The mandate to use standardized means test expenses extends only to define "disposable income", and does not extend to give meaning to the term "projected disposable income" in § 1325(b)(1)(B). *See In re Slusher*, 359 B.R. at 299 ("Section 1325(b)(3) applies only to a determination of reasonably necessary future expenses within the definition of 'disposable income'"). It follows that the most plausi-

ble reconciliation of the paragraphs of § 1325(b) is that disposable income is calculated according to the prescribed § 1325(b)(2) formula, and is then "projected" with reference to actual income and expenses as necessary to reflect a debtor's changed circumstances as of the effective date of the plan.

Some bankruptcy courts have agreed with the objectors that where a debtor's financial circumstances has changed, "projected disposable income" must be determined by the debtor's gross Schedule I income minus the debtor's means test expenses. Some of these cases read "projected disposable income" as follows:

> The word "projected" in the phrase "projected disposable income" modifies each of the component parts of "disposable income," that is, it modifies "current monthly income" and it modifies "amounts reasonably necessary to be expended for support." "Projected disposable income," then, means the "projected current monthly income" less "projected amounts reasonably necessary to be expended for support" where "reasonably necessary to be expended for support" is to be determined in accordance with Subparagraphs 707(b)(2)(A) & (B).

*In re McPherson*, 350 B.R. 38, 43–44 (Bankr.W.D.Va.2006). *See also In re Petro*, 381 B.R. 233, 235–36 (Bankr. M.D.Tenn.2008) ("[T]he BAPCPA amendments to the Bankruptcy Code require the application of a strictly mathematical formula in determining 'projected disposable income'"); *In re Hughey*, 380 B.R. 102, 106 (Bankr.S.D.Fla.2007) ("In determining the Debtor's projected disposable income,

---

**11.** See n. 3, *supra*.

**12.** Compare paragraphs (2) and (4) of § 1325(b), each of which contains the lan-

guage "for purposes of this subsection". The referenced "subsection" is the entirety of § 1325(b), which includes § 1325(b)(1)(B).

§ 1325(b)(3) mandates use of applicable expense standards as set forth in § 707(b)(2)."); *In re Meek*, 370 B.R. 294, 307 (Bankr.D.Idaho 2007); *In re Edmunds*, 350 B.R. 636, 643 (Bankr.D.S.C. 2006).

■ This statutory construct does not recognize the limitation contained in § 1325(b)(3) described above, and produces an anomalous result which is at odds with the avowed legislative purpose of the means test amendments. The legislative history of BAPCPA reflects upon congressional intent as follows:

> The heart of [BAPCPA's] consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ("needs-based bankruptcy relief" or "means-testing"), *which is intended to ensure that debtors repay creditors the maximum they can afford.*

*Kibbe, supra*, 361 B.R. at 314 (citing to H.R.Rep. No. 109–31, pt. 1, at 2 (2005), U.S.Code Cong. & Admin.News 2005, p. 88) (emphasis in original). Similarly, the Presidential Signing Statement accompanying the BAPCPA amendments "make[s] clear that Congress intended to require debtors to 'make a good-faith effort to repay as much as they can afford.'" *In re Pak*, 378 B.R. at 265 (citing to Presidential Signing Statement at http://www. whitehouse.gov/news/release/2005/04/20050420–5.html.). If we were to accept the objectors' position here, the debtors would not be able to utilize the Chapter 13 process to make a good faith effort to repay as much as they can afford. The statute would be read to require them to make a monthly payment that is three times what they can actually afford. That reading cannot be sustained. Rather, to reconcile the term "disposable income", which demands a look back, and the term "projected", which requires a look forward, where circumstances have changed, "courts should assume that Congress intended that they rely on what a debtor can realistically pay to creditors through his or her plan and not on any artificial measure." *Kibbe, supra*, 361 B.R. at 312. The debtors' ability to pay creditors as of the effective date of the plan is most accurately depicted in the debtors' Schedules I and J.[13]

Three Bankruptcy Appellate Courts that have faced this issue agree with this approach. *See In re Lanning, supra; In re Pak, supra, In re Kibbe, supra.* In each case, the debtor demonstrated a significant change in income at the time of confirmation from the historical CMI calculation. In each case, the court calculated the debtor's disposable income, and then resorted to Schedules I and J to "project" the debtor's actual ability to make plan payments going forward.[14]

I readily recognize that resort to Schedules I and J, as a departure from the "disposable income" formula of section 1325(b)(2) where there are changed circumstances, is not authorized in or directed by the statute. Courts have criticized this result, opining that

---

**13.** Schedules I and J reflect the debtors' actual net monthly income, which will be applied to satisfy administrative, priority and/or secured claims provided for under the plan. The remaining "projected disposable income" will be paid to unsecured creditors.

**14.** *Cf. In re Frederickson*, 375 B.R. 829, 835 (8th Cir. BAP 2007) (" 'Projected disposable income' is the disposable income calculated on Form 22C extrapolated over the applicable commitment period."). In *Frederickson*, the debtors' financial circumstances had not changed from the six-month period prior to the filing through the effective date of the plan.

[I]f Congress had intended that the definition of "disposable income" be merely a starting point or a presumptive figure for determining "projected disposable income", allowing courts the flexibility to make that determination, it could have so stated within the confines of § 1325(b). Instead, Congress chose to impose a rigid definition with little room for flexibility by the court.

*In re Petro,* 381 B.R. at 240–41 (quoting *In re Musselman,* 379 B.R. 583, 588 (Bankr. E.D.N.C.2007)). We are reminded by these courts that although the application of the mechanical test formulated by Congress to determine plan requirements may lead to impractical results, " '[i]t is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result.' " *Id.* at 241–42 (quoting *In re Nance,* 371 B.R. 358, 367 (Bankr.S.D.Ill.2007)).

The resort here to Schedule I and J does not represent an activist judicial attempt to improve upon the statute, or to correct perceived Congressional drafting errors. Rather, the interpretation is intended to reconcile the otherwise inconsistent notions reflected by the terms "projected" and "disposable income", where the debtors' present circumstances, as of the confirmation date, have changed from the historic calculations of the debtors' income and expenses. *In re Lanning,* 380 B.R. at 23 (citing to *Kibbe,* 361 B.R. at 312) ("Insofar as the term 'disposable income' demands a look back and the term 'projected' requires a look forward, the language is irreconcilable. One must give way to the other, or the courts must fashion an interpretation that gives the greatest meaning to both."). By this interpretation, adherence to the amended statutory text is reconciled with the pre-amendment practice of resort to Schedules I and J, particularly in light of the fact that the phrase "projected disposable income" was not changed by BAPCPA.[15] The reconciliation also furthers the expressed intent of Congress to ensure that debtors repay creditors the maximum that they can afford, as well as the need to safeguard the availability of the Chapter 13 process to good faith debtors who propose payments representing their ability to pay creditors through their Chapter 13 plan.

In commenting on this interpretive dilemma, Judge Markell articulated most effectively the difficulties of this exercise, as follows:

> The Court acknowledges that its result is not what every person reading Section 1325(b) might reach, particularly considering the general view that BAPCPA sought to limit bankruptcy judges' discretion in various areas. Regardless of what this court may write, there remains a common sense argument to the effect that if Congress had meant "disposable income" to be a presumptive guide for "projected disposable income" it could have said so in explicit terms. But it didn't, and also didn't amend Section 1325(b) so that there is but one, unambiguous, canonical reading. In this vacuum, courts must puzzle over the intended differences, if any, between "projected" disposable income and "disposable income" without a modifier. This court's result, then, can perhaps best be characterized as the least flawed

---

15. *In re Slusher,* 359 B.R. at 296 (citing to *Cohen v. de la Cruz,* 523 U.S. 213, 221, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) ("We . . . 'will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure' ") (quoting *Pa. Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 563, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990))).

of all possible interpretations, each of which is in some way unsatisfactory in its own right. 359 B.R. at 299 n. 15.[16] I concur that the "least flawed of possible interpretations" here is to resort to Schedules I and J to determine "projected disposable income" in this circumstance.

In this case, the debtors have had a substantial increase in income from their income during the six months preceding the filing. Their projected disposable income as of the confirmation hearing, with reference to Schedules I and J, is greater than the formulaic disposable income calculated under section 1325(b)(2) and (3). The debtors propose to commit that income to their Chapter 13 plan for the benefit of their unsecured creditors and to satisfy their other plan obligations. The objectors' challenge to the debtors' proposal in this regard is overruled.

**16.** In *Slusher*, on Schedules I and J, the debtor evidenced substantial ability to pay creditors ($2,364 net monthly income). On Form B22C, the debtors showed significantly less disposable income. The debtor proposed to pay the lesser amount in the plan. The court determined that the plan could not be confirmed.

**17.** Section 1325(b)(4) provides:
For purposes of this subsection, the "applicable commitment period"—
(A) subject to subparagraph (B), shall be—
(i) 3 years; or
(ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than—
(I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
(II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
(III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable

## B. *Applicable Commitment Period.*

Under section 1325(b)(1), where the trustee or an unsecured creditor objects to confirmation, the plan must provide that all of the debtor's projected disposable income to be received "in the applicable commitment period" be applied to pay unsecured creditors under the plan. Under section 1325(a)(4), the "applicable commitment period" governing these above-median income debtors is "not less than five years." [17] Therefore, the projected disposable income of the debtors to be received during the 60 months of the plan must be paid to unsecured creditors under the plan. Here, the debtors have $350 of projected disposable income per month, minus any funds necessary to satisfy other plan requirements. Therefore, the debtors must apply that projected disposable income for the commitment period applicable to them, i.e., 60 months.[18]

State for a family of 4 or fewer individuals, plus $575 per month for each individual in excess of 4; and
(B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.
11 U.S.C. § 1325(b)(4).

**18.** Distinction is drawn here between the facts in this case and the facts in *Brady, supra*. In *Brady*, because the debtors' financial circumstances had not changed, there was no basis to resort to Schedules I and J, and the debtors' negative "disposable income" was the same as their "projected disposable income". With no projected disposable income, the debtors were not required to make payments during the applicable commitment period. Here, while the debtors' "disposable income" may be negative, see discussion *infra*, the debtors' "projected disposable income", with reference to Schedules I and J, is positive. Payments during the applicable commitment period are required.

At oral argument, debtors' counsel acknowledged that the applicable commitment period here is 60 months, notwithstanding the fact that the plan was proposed as a 36 month plan. Counsel reflected that the debtors will willingly commit to make plan payments for 60 months, in conformance with the applicable commitment period.

## II. *Means Test Expense Deductions.*

The objectors also contest the expense deductions taken by the debtors on their Form 22C, claiming that if certain deductions were denied, the debtors' disposable income would be substantially higher than noted, requiring a higher payment to unsecured creditors. They focus on the debtors' vehicle ownership expense deductions for two unencumbered vehicles, i.e., vehicles not subject to any leasing or financing payments. As well, the trustee questions the $600 increase in expense deductions claimed by the debtors from the original Form 22C to the Second Amended Form 22C.

On the question of whether a debtor can claim the vehicle ownership/lease expense deduction under section 707(b)(2), for a vehicle that is unencumbered, the courts are split. *Compare In re Ransom,* 380 B.R. 799 (9th Cir. BAP 2007) (holding that a debtor may not claim an ownership expense deduction on a vehicle that is not subject to financing or lease payments) with *In re Thomas,* No. 06–21108, 2007 WL 2903201, *3 (Bankr.D.Kan. Oct.2, 2007) (holding that a debtor may claim an ownership expense deduction on a vehicle that is owned outright). We need not resolve the issue here, because the deduction of the vehicle ownership expense will not change the ultimate calculation of the debtors' projected disposable income. For purpose of this analysis, I will assume that the vehicle ownership allowance would be disallowed, without prejudice to a full examination of the issue in the appropriate case.

Aside from the vehicle ownership issue, the trustee questions the increase in expense deductions taken by the debtors from the original Form 22C to the Second Amended form, claiming that the debtors have failed to document the increases. An examination of the documents of record in this case leads me to conclude that the disallowance of the transportation ownership deduction coupled with the additional expenses claimed by the debtors results in a positive disposable income of approximately $123.00.

The trustee is certainly justified to demand documentation of all challenged expenses. However, the bases for at least some of the expense increases are readily ascertainable by reference to the debtors' Schedules I and J. For instance, the debtors' home mortgage deduction for the mortgage payable to PNC Bank, listed in Line 47 of Form 22C, increased from $1,052 [19] to $1,496.28, a difference of $444.28. The debtors apparently amended the payment to reflect the real estate taxes and homeowner's insurance associated with the property. The debtors' Schedule J lists these expenses as $435.00 ($375 for real estate taxes and $60 for homeowner's insurance). Another apparently supportable increase in Form 22C expenses is noted on line 31, describing the debtors' mandatory payroll deductions, which includes union dues. Line 31 was amended from $31 to $71.32, for a difference of $40.32. Debtors' Schedule J lists Lynda's

---

**19.** The proof of claim filed by PNC Bank reflects that the debtors' regular monthly mortgage payment is $1,051.69.

union dues as $68.38 per month. A third readily ascertainable expense is the addition of Chapter 13 administrative expenses of $20.30 on line 50. These three expense increases total $504.90. Adjusting the expenses noted in the original Form 22C produces an expense total of $5,582.22.[20] Subtracting the expenses from the debtors' CMI of $5,705.18, we would arrive at a monthly disposable income of $122.96, which is notably less than the $350 per month proposed to be paid into the plan by the debtors.

Parenthetically, I note that these calculations do not take into account other potential deductions that the debtors have not claimed on their Second Amended Form 22C. For example, eCAST has opined that the debtors are potentially eligible to claim a $200 deduction for each vehicle based on the age and excess mileage of the vehicles. *See, e.g., In re Slusher*, 359 B.R. at 310; Internal Revenue Manual, Pt. 5, Ch. 15 § 5.8.5.5.2. The debtors have not sought these deductions. These deductions would reduce the debtors' monthly disposable income to a negative number, even without considering the debtors' increased deductions for life insurance, health care and additional food expenses.

The challenges to the debtors' Second Amended Form 22C are overruled.

### CONCLUSION

I conclude that the objections of the creditor eCAST and the Chapter 13 trustee to the debtors' proposed Chapter 13 plan, as modified, must be overruled. With the adjustment of the plan to pay $350 for 60 months, the debtors have proposed to pay their projected disposable income to unsecured creditors for the applicable commitment period. The plan is confirmed.

The debtors' counsel is directed to submit a form of order in conformance with this opinion.

| | |
|---|---|
| Total of all deductions listed on original Form 22C | $5,913.22 |
| Minus vehicle ownership deduction for two unencumbered vehicles | – $  803.00 |
| Minus unsubstantiated "Additional Food and Clothing Expense" on Line 44 | – $   33.00 |
| Plus ascertainable expense increases listed in Second Amended Form 22C | $  504.90 |
| | $5,582.22 |