**In re Stephanie Kay LANNING, Debtor.**

**Jan Hamilton, Trustee, Appellant.**

**BAP No. KS–07–067. Bankruptcy No. 06–41037.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Dec. 13, 2007.

52. B.A.P.C.P.A., 11 U.S.C. § 327(a) (2005).

Submitted on the briefs: *

Jan Hamilton, pro se, and Teresa L. Rhodd, Chapter 13 Trustee's Office, Topeka, KS, for Appellant.

Joyce Owen, Assistant United States Trustee and Richard A. Wieland, Acting United States Trustee, of the United States Trustee's Office, Wichita, KS (Roberta A. Deangelis, Acting General Counsel, P. Matthew Sutko, and Melissa R. Burgess of the Executive Office for United States Trustees, Washington, D.C., of counsel) for United States Trustee as Amicus Curiae supporting affirmance.

Before BOHANON, McNIFF, and THURMAN, Bankruptcy Judges.

## OPINION

THURMAN, Bankruptcy Judge.

In this case, the Chapter 13 Trustee appeals the bankruptcy court's order denying one of his objections to the Debtor's proposed plan. Although the Debtor did not participate in this appeal, the United States Trustee's Office filed an amicus brief in support of the bankruptcy court's decision. For the reasons stated herein, we AFFIRM.

## I. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely-filed appeals from final judgments and orders of bankruptcy courts within the Tenth Circuit and, with leave of court, interlocutory orders. 28 U.S.C. § 158;

*Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 768 (10th Cir. BAP 1997); Fed.R.Bankr.P. 8003. On July 31, 2007, this Court granted the Appellants' Motion for Leave to Appeal Interlocutory Order. Therefore, this Court has jurisdiction over this appeal.

## II. BACKGROUND

The facts relevant to this appeal are uncontested, and were presented to the bankruptcy court by stipulation. The Debtor's annual income was $43,147 in 2004, and $56,516 in 2005. She filed a petition for Chapter 13 relief on October 16, 2006, and timely filed her Statement of Financial Affairs and her schedules. During the six months preceding the filing, the Debtor received a buy-out from her employer that resulted in an increase in her monthly income to $11,990 in April 2006, and $15,356 in May 2006. In connection with the buy-out, Debtor's employment was terminated. Therefore, at the time of filing, her actual monthly income (as shown on Schedule I) was $1,922, which is $23,604 when annualized. However, due to the "bump" in income she received in April and May, the Debtor's "current monthly income" (as determined by her Statement of Current Monthly Income, or "Form B22C"[1]) was $5,344, or $64,124 annually. Since the median annual income for a family of one in Kansas is $36,631, the Debtor's annualized "current monthly income" is well above-median, which subjects her to the more rigorous standards

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

1. Actually, Form B22C is an interim form that became Form 22C once the BAPCPA official forms were adopted. Many opinions continue to refer to the form as "B22C," and many jurisdictions are still using up their interim forms. In this case, Debtor filled out a form designated as "B22C." However, our analysis is equally applicable to either.

applicable to above-median debtors.[2]

The Debtor's actual monthly expenses (as shown on Schedule J) total $1,773, while her deductions on Form B22C total $4,228. Thus, under the pre-BAPCPA "I minus J" formula, the Debtor would have excess monthly income (available for plan payments) of $149 ($1,922 actual income minus $1,773 actual expenses). However, the figure resulting from the calculation of Debtor's monthly "disposable income" on Form B22C is $1,114 ($5,344 "current monthly income" minus $4,228 using the standardized deductions).

## III. ISSUE AND STANDARD OF REVIEW

We here deal with an issue of interpretation of a statute that has received a great deal of attention in the courts: May an above-median debtor's "projected disposable income," pursuant to 11 U.S.C. § 1325(b)(1)(B),[3] deviate from "current disposable income" determined under Form B22C, where the debtor establishes such a significant change in circumstances that "current disposable income" does not accurately or fairly project her future ability to pay creditors?

 The interpretation of statutes is an issue of law that is subject to *de novo* appellate review.[4] *De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[5]

## IV. DISCUSSION

 Prior to passage of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") in 2005, the income available to a Chapter 13 debtor for repayment of debts was typically determined by a relatively straightforward formula. A debtor's monthly income was reported on Schedule I of his or her bankruptcy schedules, and the reasonably necessary expenses were reported on Schedule J. Once these numbers were determined to be allowable and accurate, the amount left over after Schedule J's total was subtracted from Schedule I's total was generally the amount that was designated under the debtor's plan as available for payment to creditors for the plan period. Under BAPCPA, debtors still report their actual monthly income and expenses on Schedules I and J. However, BAPCPA created a new method for determining the amount debtors are required to pay under their plans. Thus, plan payments are no longer determined solely by the "I minus J" calculation.

 "Current monthly income" is defined under BAPCPA as "the average monthly income from all sources that the debtor receives ... during the 6–month period" preceding filing of the petition.[6] That figure can be "annualized" by multiplying it by twelve. Once the debtor's current annual income is determined, it is compared to the "median income" level for the debtor's family size and place of residence (as provided by the U.S. Census

---

**2.** The Debtor's annual income prior to the buy-out and loss of her former job was also above the median annual income for a family of one in Kansas.

**3.** Unless otherwise indicated, all statutory references contained herein are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

**4.** *In re Overland Park Fin. Corp.*, 236 F.3d 1246, 1251 (10th Cir.2001).

**5.** *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

**6.** § 101(10A).

Bureau), and a determination is made as to whether the debtor's income is above or below the median for their circumstances. A finding that a debtor is "above-median" is significant because, pursuant to section 1325(b)(3) and (4), above-median debtors are required both to use standardized deductions[7] and to make plan payments for five years instead of three.[8] Thus, an above-median debtor's "disposable income" is defined as "current monthly income" minus the standardized deductions.[9] Form B22C is the vehicle by which a debtor's "disposable income" is determined.

■ In this appeal, the amount determined by the Form B22C calculations to be the Debtor's monthly "disposable income" is not contested, nor is her designation as "above-median." The only issue before this Court is how the Debtor's "projected disposable income" is determined.

The import of this determination is that section 1325(b)(1)(B) only allows court approval of a proposed plan over the trustee's objection if the plan provides for payment of "all of the debtor's *projected disposable income* to be received" during the plan period (emphasis added). According to the Trustee, an above-median debtor's "projected disposable income" is simply a multiple of their Form B22C "disposable income."[10] Using this analysis, the Debtor's plan could not be approved unless it provided for 60 payments of $1,115 each, for a total payout of $66,900 over five years. Given Debtor's actual monthly income of $1,922, such payments would leave her with only $807 to pay her $1,773 expenses. Thus, the Trustee's interpretation of section 1325(b)(1)(B) requires the Debtor to commit to payments she cannot possibly make in order to obtain the protections afforded by bankruptcy.[11]

7. Standardized deductions are determined by the IRS and National Standards and Local Standards, and are set forth in 11 U.S.C. § 707(b)(2).

8. We note that there is some dispute regarding the "applicable commitment period" where an above-median debtor has no Form B22C disposable income. *Compare, e.g., In re Alexander*, 344 B.R. 742, 750–51 (Bankr. E.D.N.C.2006), *with In re Beckerle*, 367 B.R. 718, 719–20 (Bankr.D.Kan.2007). However, although plan duration was a consideration before the bankruptcy court in the present case, it was not raised as an issue on appeal and, therefore, we do not attempt to resolve it here.

9. § 1325(b)(2).

10. The Trustee's interpretation of "projected disposable income" involves a number of mathematical calculations that conclude with the equation "projected disposable income = monthly disposable income." First, Form B22C "current monthly income" is determined by averaging the debtor's total income over a previous six month period. Next, that figure is multiplied by 12 in order to determine the debtor's median standing. In the

case of an above-median debtor, standardized deductions set forth on Form B22C are then subtracted from current monthly income to determine "monthly disposable income." Monthly disposable income may then be multiplied by 60 to determine the "projected" amount of the debtor's total plan payments. However, the total amount the debtor pays over the life of the plan is essentially meaningless, since plans simply provide for 60 monthly payments of "monthly disposable income." Thus, the Trustee's interpretation essentially renders the term "projected" meaningless.

11. The standardized deductions for housing, utilities, food, clothing, and household and personal care supplies for a family of one in Kansas total $1,574, without including transportation, taxes, health care, and telecommunication expenses. Nonetheless, this figure alone exceeds what the Trustee would have Debtor live on by $767 per month. That the Trustee has neither alleged that the Debtor lacked good faith in filing her petition, nor challenged the Debtor's "actual" income or expense figures, makes such an outcome seem especially unreasonable.

This Court has not had occasion to consider this particular application of BAPC-PA previously. However, other courts that have addressed the definition of "projected disposable income" generally fall into one of two groups. The first group, which has generated the majority of published decisions on the issue, holds that the term "projected" in section 1325(b)(1)(B) modifies "disposable income" such that the determination of the amount a debtor must propose to pay over the plan commitment period may require consideration of more than just the Form B22C mathematical calculation of "disposable income."[12] In other words, the term "projected disposable income" is not simply a multiple of "disposable income." These cases typically reason that Congress's use of the term "projected" and the phrase "to be received by the debtor" in section 1325(b)(1)(B) indicates an intent that bankruptcy courts consider a debtor's *future* ability to pay in determining projected disposable income.

This result is based, in part, on the well-established principle of statutory construction that, when particular language is used in one part of a statute but not in another, Congress must have intended for that language to add meaning to the defined phrase.[13] Thus, these cases conclude that "projected disposable income" means something more than simply "disposable income."

A number of other well-reasoned cases disagree with this analysis and insist on a more narrow interpretation of the term "projected disposable income" and the calculations from Form B22C.[14] Thus, these cases reason that the BAPCPA amendments did in fact eliminate bankruptcy court discretion, and that the Form B22C calculations are binding, regardless of changed circumstances.[15] Whereas courts interpreting section 1325(b)(1)(B) to allow consideration of changed circumstances reason that the term "projected" must

12. The bankruptcy court's published decision in this case provides an excellent summary of cases in this category, which can be found at *In re Lanning*, No. 06–41037, 2007 WL 1451999, at *4, n. 18 (Bankr.D.Kan. May 15, 2007).

13. *See Negonsott v. Samuels*, 507 U.S. 99, 106, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993) (in its interpretation of a statute, a court must give meaning and import to every word in the statute); *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (it must be assumed that "Congress acts intentionally and purposefully when it includes particular language in one section of a statute but omits it in another") (quoting *Chicago v. Envtl. Def. Fund*, 511 U.S. 328, 338, 114 S.Ct. 1588, 128 L.Ed.2d 302 (1994)).

14. The bankruptcy court's decision also provides a summary of this line of cases. *See In re Lanning*, 2007 WL 1451999 at *5, n. 20. We note that the minority line of reasoning has, on occasion, been referred to as the "plain meaning" interpretation, based on statements in some of the cases to the effect that their interpretation of § 1325 is dictated

by the plain meaning of the term "projected." On the other hand, at least one majority decision concluded "that the language of § 1325(b)(1)(B) is clear and unambiguous" in connection with its holding that use of the term "projected" next to "disposable income" requires courts to consider both "future and historical finances." *See In re Jass*, 340 B.R. 411, 415–16 (Bankr.D.Utah 2006). Given the potential for confusion between cases relying on "plain meaning" and "clear and unambiguous" statutory language to reach opposite results, we prefer the term "more narrow interpretation" in referring to the minority line of reasoning.

15. Not all courts in this category consider such a method of calculation to be an improvement over the pre-BAPCPA method. Thus, the court in *In re Kolb*, 366 B.R. 802, 820 (Bankr.S.D.Ohio 2007) described its holding as "the unfortunate result of a congressionally-created system that uses rigid formulas to calculate a debtor's chapter 13 plan payments rather than considering a debtor's present financial reality and ability to pay."

have some independent meaning, the more narrow interpretation courts consider that determination to be an inflation of the term's importance, and that "projected" quite simply means multiplied.

The Bankruptcy Appellate Panel of the First Circuit ("First Circuit BAP") has adopted the majority view in a below-median debtor's appeal of the rejection of her proposed plan.[16] In *Kibbe*, because the calculation of the debtor's Form B22C disposable income was negative, she had proposed a plan that provided no payments for the benefit of her unsecured creditors. The trustee objected to confirmation on the ground that the debtor had obtained a higher-paying job shortly before filing her petition, and her actual income was nearly $2,400 more than her expenses.[17] Thus, the trustee in *Kibbe* took the same position taken by the Debtor in the present case, that bankruptcy courts may still consider significant changes in circumstances that cause Form B22C's "monthly disposable income" to be an inaccurate projection of a debtor's future ability to make plan payments. The bankruptcy court agreed, and rejected the debtor's plan. On interlocutory review, the First Circuit BAP affirmed, specifically rejecting an interpretation of "projected" as a synonym for "multiplied," and relying on the reasoning of the courts in *Jass*[18] and *Hardacre*[19]:

> In the event that a debtor's "current monthly income" as set forth by Form B22C is substantially the same as the actual current income at the time of

confirmation of the plan, less the Income Exclusions, the inquiry begins and ends with Form B22C. But where, as here, the "current monthly income" amount is not true to the debtor's *actual* current income, courts should assume that Congress intended that they rely on what a debtor can realistically pay to creditors through his or her plan and not on any artificial measure. Attaching the word "projected" to a historical calculation assumes, without justification, that a debtor's circumstances will not change after the date of case commencement or during the plan commitment period. Life informs otherwise. Insofar as the term "disposable income" demands a look back and the term "projected" requires a look forward, the language is irreconcilable. One must give way to the other, or the courts must fashion an interpretation that gives the greatest meaning to both.[20]

The *Kibbe* court held that Form B22C monthly disposable income is ordinarily a sufficient indication of "projected disposable income." However, where either the debtor's actual income at confirmation or the "reasonably anticipated" income over the plan period is not "substantially the same" as the Form B22C figure, the bankruptcy court must consider those facts in determining the debtor's "projected" income. The *Kibbe* court concluded that, to interpret section 1325(b)(1)(B) otherwise, would deny both debtors and creditors the

**16.** *In re Kibbe,* 361 B.R. 302 (1st Cir. BAP 2007).

**17.** The *Kibbe* debtor's Schedule J expenses were used in both determinations of her disposable income, because below-median debtors do not use the Form B22C standardized deductions that are used by above-median debtors. As in the present case, there was no dispute in *Kibbe* regarding that debtor's median placement, which is a determination based on historical income.

**18.** *In re Jass,* 340 B.R. 411 (Bankr.D.Utah 2006).

**19.** *In re Hardacre,* 338 B.R. 718 (Bankr. N.D.Tex.2006).

**20.** *Kibbe,* 361 B.R. at 312 (footnote omitted).

protections that Congress intended them to have under Chapter 13.

Another recent appellate decision addressing this issue is *In re Pak*.[21] As did *Kibbe*, the *Pak* case involved a below-median debtor whose income had dramatically increased shortly before his bankruptcy filing, and who proposed plan payments that were well below his actual ability to pay. Again, the trustee's objection to the proposed plan was accepted by the bankruptcy court, which refused to confirm the plan. The debtor's subsequent refusal to propose a different plan caused his case to be dismissed. The Ninth Circuit BAP affirmed the bankruptcy court's refusal to confirm, stating:

> [W]e agree with the bankruptcy courts in both *Jass* and *Alexander*, 344 B.R. [742 (Bankr.E.D.N.C.2006)] at 748, that the calculated "disposable income" of the debtor must be the starting point in determining "projected disposable income." The standards for determining "disposable income" initially anchor the term "projected disposable income." However, if the interpretation of "projected disposable income" is not to degenerate into absurdity, deriving "projected disposable income" from "disposable income" must be subject to the presentation of contrary evidence before confirmation of a debtor's chapter 13 plan. "Chapter 13 is not some alternative universe where reality dare not intrude." [*In re*] *Mullen*, 369 B.R. [25 (Bankr.D.Or.2007)] at 34. It makes no sense to interpret "projected disposable income," governing debtors' future payments under their chapter 13

plans, as cast in stone by their pre-bankruptcy history, without any opportunity for the trustee, creditors *or the debtor* to offer rebutting evidence as to changed income circumstances before the effective date of the plan.[22]

As noted by most of the courts attempting to resolve this issue, although BAPCPA added a definition of "disposable income," it neither defined nor modified the pre-existing term "projected disposable income." Thus, BAPCPA linked "disposable income" to Form B22C current monthly income, which is a historically based figure, but it left "projected disposable income," which had an established pre-BAPCPA treatment, alone. Prior to the amendment of section 1325, Schedules I and J were the main reference points for determining debtors' projected disposable income. However, if the bankruptcy court had reason to believe that those schedules did not accurately predict a debtor's actual ability to pay, other evidence was also considered. As such, pre-BAPCPA, projected disposable income was not determined solely by a mathematical formula. Although the amendments to section 1325 specify the formula by which to determine a debtor's median standing, as well as the monthly disposable income as of the date of the petition, they give us no reason to believe that Congress intended to eliminate the bankruptcy courts' discretion to deviate from an application of that formula where significant circumstances support doing so.[23]

Therefore, we agree with the courts that have found "disposable income" to be only the starting point in determining "project-

---

21. 378 B.R. 257 (9th Cir. BAP 2007).

22. *Id.*, at 267.

23. *See Cohen v. de la Cruz*, 523 U.S. 213, 221, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) (the Bankruptcy Code should not be read "to erode past bankruptcy practice absent a clear indication that Congress intended such a departure") (quoting *Penn. Dept. of Pub. Welfare v. Davenport*, 495 U.S. 552, 563, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990)).

ed disposable income" under section 1325(b)(1)(B). Where it is shown that Form B22C disposable income fails accurately to predict a debtor's actual ability to fund a plan, that figure may be subject to modification. This position is both analogous to, and consistent with, BAPCPA amendments to section 707, which were intended to divert debtors with the financial ability to pay at least something to their unsecured creditors out of Chapter 7 and into Chapter 13. Thus, section 707(b)(2)(A)(i) now includes a presumption that granting a Chapter 7 discharge would be an "abuse" of the provisions of Chapter 7 whenever a debtor's Form B22C "current monthly income" falls within certain parameters, following application of a purely mathematical formula to it. However, section 707(b)(2)(B)(i) allows debtors to rebut that presumption "by demonstrating special circumstances ... that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative."

 Chapter 7 debtors seeking to rebut the abuse presumption are required to itemize their increased expenses or changes in income, to provide both documentation and a detailed explanation of the "special circumstances" they claim, and to attest to them under oath.[24] Given section 707's similar use of Form B22,[25] we look to that section for guidance in considering a Chapter 13 debtor's claim that a substantial change of circumstances justifies a similar deviation from Form B22C. Therefore, parties contending that a debtor's Form B22C disposable income figure does not accurately project the debtor's future ability to fund a plan must present documentation similar to that required by sec-

tion 707(b)(2)(B)(ii) in support of their claim. However, we emphasize that deviation from the Form B22C determination of disposable income will be the exception rather than the rule.

## V. CONCLUSION

The bankruptcy court's order denying the Trustee's objection to the Debtor's proposed plan, on the ground that it proposes to pay less than the Debtor's projected disposable income as calculated by Form B22C, is therefore AFFIRMED.

---

**24.** § 707(b)(2)(B)(ii), (iii).

**25.** Chapter 7 debtors use Form 22A, rather than Form 22C. However, as their designation implies, these two forms are simply variations of the same form, each of which has been modified to apply to either Chapter 7 or Chapter 13 debtors.