In re Kristina MARCHIONNA, Debtor.

No. 08–10536.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Aug. 25, 2008.

Susan M. Gray, Susan M. Gray Attys & Counselors at Law, Rocky River, OH, for Debtor.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

Before the Court is the Trustee's Objection to Plan Confirmation (the "Objection"), which is opposed by the Debtor, Kristina Marchionna (the "Debtor"). The Court acquires jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157 and General Order No. 84 of this District. Upon a duly noticed hearing and a review of the record, the following findings of fact and conclusions of law are hereby rendered:

*

On January 25, 2008 (the "Petition Date"), the Debtor filed her petition for relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code"). Contemporaneously with her petition, she filed various schedules. On Schedule A, she listed her ownership interest in real property located at 16760 Parklane Drive, Strongsville, Ohio, (the "Property"), which she valued at $120,000.00. On Schedule D, she listed a claim of Wells Fargo Bank, secured by a first mortgage on the Property. The amount of the claim is $180,000.00, with $60,000.00 of the claim scheduled as unsecured.

The Debtor also filed Schedule I, Current Income of Individual Debtor(s), identifying a combined average monthly income of $4,855.99 and Schedule J, Current Expenditures of Individual Debtor(s), showing average monthly expenses of $4,495.85. Among the average monthly expenses, $1,300.00 was listed as rent or home mortgage payment. Subtracting the average monthly expenses from the average monthly income leaves a net monthly income of $360.14.

Along with her petition, the Debtor submitted Form 22C, Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, which is also referred to as the "means test." Her reported income included that of her non-debtor spouse.[1] Form 22C indicates a combined current monthly income of $6,655.58 for the Debtor

---

1. The spouse's Chapter 13 case was dismissed on September 7, 2007 and his case was closed on December 20, 2007.

and her spouse. Their annual income of $79,866.96 exceeds the applicable median family income in Ohio for a household of three. *See,* http://www.usdoj.gov/ust/eo/bapcpa/20080101/bci___data/median___income___table.htm (median income amount for a debtor, who is an Ohio resident, with a family of three that filed a bankruptcy case between January 1, 2008, and January 31, 2008). Their deductions from income totaled $8,376.97, including deductions on lines 47(b) and 48(a) for debt secured by the Property. The amounts of the debt payments for mortgage payments and arrears are $1,960.00 and $940.21, respectively. With these deductions from the combined monthly income, the monthly disposable income is negative $1,721.39.

Subsequently, the Debtor filed her Chapter 13 repayment plan (the "Plan"). The Plan proposes to pay $360.14 per month for 60 months with a 5% dividend to unsecured creditors. Additionally, Article 11 of the Plan entitled "Special Provisions" states the following:

> Mrs. Marchionna has no plans at this time to reinstate the mortgage loan but she does intend to find a way to keep her house. For purposes of this bankruptcy case, in terms of dealing with payment expectations, the real estate should be considered surrendered in full satisfaction of the creditor's claim.

The Trustee then filed an Objection to Plan Confirmation seeking an increased monthly Plan payment of $482.00 and/or a 100% dividend to unsecured creditors to account for the Debtor's stated intention to surrender the Property in full satisfaction of the secured creditor's claim.

\* \*

The Trustee argues that the Debtor is not devoting all of her projected disposable income to the Plan as required by § 1325(b) of the Bankruptcy Code because her calculation of disposable income im-properly deducts mortgage payments and arrearage payments in a sum of $2,900.21 per month on Property she proposes to surrender pursuant to the Plan. As the Debtor will not be making the payments on the surrendered Property, the Trustee asserts that there would be monthly disposable income available to fund her Plan during the applicable commitment period. Additionally, the Trustee distinguishes between the forward-looking nature of a Chapter 13 case and the snapshot approach for purposes of a Chapter 7 case. Therefore, the Trustee contends, the Plan has not been proposed in good faith and Plan Confirmation should be denied.

The Debtor opposes the Trustee's Objection and asserts that she correctly calculated her disposable income. She argues that the purpose of the means test requirements in a Chapter 7 case and a Chapter 13 case are precisely the same— to determine whether a debtor has disposable income to pay unsecured creditors. She contends that a Chapter 13 debtor, like a Chapter 7 debtor, is entitled to deduct payments on secured debt pursuant to 11 U.S.C. § 707(b)(2)(A)(iii) made applicable to Chapter 13 under § 1325(b)(3), notwithstanding a stated intention to surrender the collateral.

\* \* \*

The issue before this Court is whether a Chapter 13 debtor may take deductions on Form 22C for future payments on debt secured by real estate which she plans to surrender.

\* \* \* \*

Section 1325(b)(1) requires a debtor either to pay the full amount on his claims or commit all projected disposable income to the Plan. Section 1325(b)(1) provides as follows:

> If the trustee ... objects to the confirmation of the plan, then the court may

not approve the plan unless, as of the effective date of the plan -

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1).

Section 1325(b)(2) provides as follows:

For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—

(A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and

(ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization) (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b)(2).

In pertinent part, §§ 1325(b)(3)(B) and (b)(4)(A)(ii)(II) state,

Amounts reasonably necessary to be expended under paragraph (2), ..., shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than—

. . .

(B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals;

. . .

(4) For purposes of this subsection, the "applicable commitment period"—

(A) subject to subparagraph (B), shall be—

. . .

(ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than—

(II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals;

11 U.S.C. §§ 1325(b)(3) and (b)(4).

Bankruptcy Procedural Rule 1007 sets forth the lists, schedules, statements and other documents a debtor is required to file.

A debtor in a chapter 13 case shall file a statement of current monthly income, prepared as prescribed by the appropriate Official Form, and, if the debtor has current monthly income greater than the median family income for the appli-

cable state and family size, a calculation of disposable income in accordance with § 1325(b)(3), prepared as prescribed by the appropriate Official Form.

Fed. R. Bankr.P. 1007(b)(6)[Interim].[2]

With regard to secured debts, § 707(b)(2)(A)(iii) states:

(iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—

(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

divided by 60.

. . .

11 U.S.C. § 707(b)(2)(A)(iii).

\* \* \* \* \*

■ Pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act (hereinafter, "BAPCPA"), significant amendments to the Bankruptcy Code were enacted. At issue in this case is the impact of the Debtor's stated intention to surrender real estate in full satisfaction of a secured creditor's claim on her compliance with the statutory requirements for plan confirmation under § 1325 of the Bankruptcy Code. The debtor bears the burden of establishing that the plan complies with the statutory requirements for confirmation. *In re Watson*, 403 F.3d 1

(1st Cir.2005). "While the objecting party must meet the initial burden of producing evidence in support of his objection, the debtor bears the ultimate burden of persuasion on the issue of compliance with the confirmation criteria contained in § 1325(a)." *In re Henry*, 328 B.R. 529, 538 (Bankr.S.D.Ohio 2004) *quoting In re Carver*, 110 B.R. 305, 311 (Bankr.S.D.Ohio 1990).

■ Section 1325 of the Bankruptcy Code, as amended by BAPCPA, requires debtors to propose a plan that will pay their unsecured creditors in full, or, that provides for all of their projected disposable income to be used to make payments to unsecured creditors for the applicable commitment period. 11 U.S.C. § 1325(b)(1). The Bankruptcy Code does not define the term "projected disposable income." However, "disposable income" is defined at 11 U.S.C. § 1325(b)(2). 11 U.S.C § 1325(b)(2). "Disposable income" is determined by subtracting "amounts reasonably necessary to be expended" from "current monthly income." 11 U.S.C. § 1325(b)(2). Title 11 U.S.C. § 101(10A) defines "current monthly income" as:

. . . the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6–month period ending on—

(i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii);

. . .

---

**2.** The Interim Rules were adopted in their entirety by this District by General Order No.2005–11.

11 U.S.C. § 101(10A). "Amounts reasonably necessary to be expended" is defined at § 1325(b)(3) by reference to § 707(b)(2). 11 U.S.C. § 1325(b)(3).

■ In a Chapter 7 case, the provisions of section 707(b)(2) are used to determine whether a presumption of abuse arises warranting dismissal or conversion. 11 U.S.C. § 707(b)(2). Section 707(b)(2) describes deductions for various expenses for above median income debtors. *Id.* These deductions are used to determine whether a Chapter 7 debtor has sufficient disposable income available to make payments to unsecured creditors under a potential Chapter 13 plan. *Id.* If there is sufficient disposable income available to fund a Chapter 13 plan, then seeking relief pursuant to Chapter 7 constitutes an abuse of the Chapter 7 provisions. *Id.*

■ Section 707(b)(2) is incorporated by reference into § 1325(b)(3) to determine what expenses are reasonably necessary for purposes of calculating the amount of disposable income available to fund an above median income debtor's plan of reorganization in a Chapter 13 case. 11 U.S.C. § 1325(b)(3); Fed. R. Bankr.R. 1007(b)(6). *See also,* Form 22C, Line 23. "In contrast, the expense component for below median income debtors is determined—as it was prior to BAPCPA—by reference to the figures provided by Schedules I and J." *In re Turner,* 384 B.R. 537, 539–540 (Bankr.S.D.Ind.2008)(internal citations omitted). Herein, the Debtor is an above median income debtor[3] and the "amounts reasonably necessary to be expended" are determined by reference to the applicable deductions described under § 707(b). 11 U.S.C § 1325(b)(3).

Among the available deductions provided for pursuant to § 707(b)(2)(A)(iii), a debtor may deduct

(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence ... that serves as collateral for secured debts;

divided by 60.

11 U.S.C. § 707(b)(2)(A)(iii). Bankruptcy courts differ on what is meant by the language of this section in the context of a debtor who has stated an intention to surrender the collateral securing the debt. Some courts have held that a Chapter 7 debtor may not deduct payments for secured debts that the debtor intends to surrender. *See In re Ray,* 362 B.R. 680 (Bankr.D.S.C.2007); and *In re Skaggs,* 349 B.R. 594 (Bankr.E.D.Mo.2006). Other courts, including this Court, have held that a Chapter 7 debtor who has stated an intention to surrender the collateral securing the debt may nonetheless deduct payments secured by that property[4]. Although this Court has unanimously held

---

3. As previously stated, the combined annual income of the Debtor and her spouse is $79,866.96, which exceeds the applicable median family income in Ohio for a household of 3. *See,* http://www.usdoj.gov/ust/eo/ bapcpa/20080101/bci/BC1___data/median___income___table.htm

4. *See In re Haar,* 360 B.R. 759, 768 (Bankr. N.D.Ohio 2007) (Speer, J.); *In re Zak,* 361 B.R. 481, 488 (Bankr.N.D.Ohio 2007)

(Woods, J.); *In re Simmons,* 357 B.R. 480, 485 (Bankr.N.D.Ohio 2006) (Shea–Stonum, J.); *In re Doud,* No. 07–11280, 2007 Bankr.LEXIS 4031, *12 (Bankr.N.D.Ohio 2007) (Baxter, J.); *In re Augenstein,* No. 06–13867, 2007 Bankr, LEXIS 4033, *5–6 (Bankr.N.D.Ohio 2007) (Morgenstern–Clarren, J.); *In re Vanhoose,* No. 06–31813, 2007 Bankr.LEXIS 4032, *19 (Bankr.N.D.Ohio 2007) (Whipple, J.)

that a Chapter 7 debtor may deduct payments for secured debts even if he intends to surrender the property, this issue has not been addressed in the context of a Chapter 13 case in this District,[5] and no full Circuit Court[6] has ruled on the specific issue of surrender raised in this case.

Bankruptcy courts are split regarding the calculation of a Chapter 13 debtor's "projected disposable income" under § 1325 of the Bankruptcy Code. 11 U.S.C. § 1325. The disagreement is two-fold. Bankruptcy courts disagree as to how income and expenses are to be calculated and when such calculation is to be made. Since "projected disposable income" is not defined by the Bankruptcy Code, courts have applied two general approaches. In what has come to be known as the "multiplicative approach," some courts treat the term "projected" to refer to the result of taking the "disposable income," which is defined by the Bankruptcy Code at § 1325(b)(2), and multiplying it by the "applicable commitment period" defined at § 1325(b)(4). *In re Kagenveama*, 527 F.3d 990 (9th Cir.2008); *In re Mancl*, 381 B.R. 537 (W.D.Wis.2008); *In re Frederickson*, 375 B.R. 829 (8th Cir.BAP2007); *In re Green*, 378 B.R. 30 (Bankr.N.D.N.Y.2007); *In re Bardo*, 379 B.R. 524 (Bankr.M.D.Pa. 2007); *In re Winokur*, 364 B.R. 204 (Bankr.E.D.Va.2007); *In re Kolb*, 366 B.R. 802 (Bankr.S.D.Ohio 2007); *In re Berger*, 376 B.R. 42 (Bankr.M.D.Ga.2007). The other line of cases treats "projected disposable income" as a "forward-looking" concept that looks beyond Form 22C. *In re Lanning*, 380 B.R. 17 (10th Cir.BAP2007); *In re Pak*, 378 B.R. 257(9th Cir.BAP2007); *In re Kibbe*, 361 B.R. 302 (1st Cir.

BAP2007); *In re May*, 381 B.R. 498 (Bankr.W.D.Pa.2008); *In re Vernon*, 385 B.R. 342 (Bankr.M.D.Fla.2008); *In re Van Bodegom Smith*, 383 B.R. 441 (Bankr. E.D.Wis.2008); *In re Sackett*, 374 B.R. 70 (Bankr.W.D.N.Y.2007); *In re Spurgeon*, 378 B.R. 197 (Bankr.E.D.Tenn.2007); *In re Edmunds*, 350 B.R. 636 (Bankr.D.S.C., 2006); *In re Hardacre*, 338 B.R. 718 (Bankr.N.D.Tex.2006). There is further split among the "forward-looking" courts as to whether Form 22C may be modified as to income only, expenses only, or both income and expenses upon a change of circumstances. *Id.* Some of these courts consider the means test to be a presumption that may be rebutted with evidence of "a substantial change in circumstance such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future," then "a projected budget based upon the evidence, reflecting projected earnings and projected reasonable necessary expenses will govern the determination of 'projected disposable income' for purposes of confirmation of the plan." *In re Watson*, 366 B.R. 523, 531–532 (Bankr.D.Md.2007). *See also, In re Liverman*, 383 B.R. 604, 610 (Bankr.D.N.J.2008); *In re Meek*, 370 B.R. 294, 308 (Bankr.D.Idaho 2007); *In re Jass*, 340 B.R. 411, 418 (Bankr.D.Utah 2006).

Further complicating the issue is the split over when income and expenses are to be determined—as of the petition date or as of the effective date of the plan. Section 1325(b)(1) of the Bankruptcy Code requires a debtor to commit all of his "projected disposable income" to the plan "as of the effective date of the plan." 11

---

**5.** The Southern District of Ohio has recently addressed this issue and held that "contractually incurred secured debt scheduled on Schedule D relating to collateral being surrendered under a Chapter 13 plan may be deducted under § 707(b)(2)(A)(iii)(I) in calculating disposable income." *See In re Anderson*, 383 B.R. 699, 707–8 (Bankr. S.D.Ohio 2008)

**6.** Several Bankruptcy Appellate Panels have rendered decisions with differing outcomes.

U.S.C. § 1325(b)(1). However, as part of the definition for disposable income, § 1325(b)(3) references § 707(b) for applicable expenses, 11 U.S.C. § 1325(b)(3). The term referenced under section 707(b) for applicable expenses is the petition date. 11 U.S.C. § 707(b).

To sort out these issues, a review of the statutory language is necessary. "The starting point in discerning congressional intent is the existing statutory text, and not the predecessor statutes. It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (citations omitted). Section 1325(b)(3) states that reasonably necessary expenses "shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)." 11 U.S.C. § 1325(b)(3). The plain language of § 1325 provides that the expense deductions for a Chapter 13 case are determined by reference to § 707(b)(2).

Herein, it is undisputed that the Debtor is a Chapter 13 debtor who seeks to surrender the Property in full satisfaction of her mortgage. Her proposed Plan unambiguously states this intention. Furthermore, the Debtor did not oppose a Motion for Relief from Stay filed by Wells Fargo Bank, which was granted previously. *See,* Order for Relief from Stay, Docket No. 25. Therein, the Trustee was ordered to discontinue payments on debts secured by the Property. *Id.*

Although this Court acknowledges that disposable income for an above median income debtor is determined according to the provisions of § 1325(b)(3) that incorporate § 707(b)(2), the analysis does not end there. Section 707(b)(2)(A)(iii) provides:

(iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—

(I) the total of all amounts scheduled as *contractually* due to secured creditors in each month of the 60 months following the date of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, *to maintain possession of the debtor's primary residence*, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

divided by 60. (*Emphasis added* ).

11 U.S.C. § 707(b)(2)(A)(iii). Since the Debtor's Plan calls for surrender of the Property in full satisfaction of the mortgage claim, there will not be any "amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition." *Id.* As stated above, the Trustee has already been ordered pursuant to the Order for Relief from Stay to discontinue payments on debts secured by the Property and no payments following the date of the petition have been made or will be made pursuant to the Plan. Where relief from the automatic stay or confirmation of the proposed plan will eliminate the need to make future payments to a secured creditor, the amounts will no longer be scheduled as contractually due and will no longer be within the meaning of an eligible deduction for secured debt pursuant to § 1325(b)(3). *In re Spurgeon*, 378 B.R. 197, 200–01 (Bankr.E.D.Tenn.2007). Additionally, since there will be no "additional payments to secured creditors necessary for the debtor ... *to maintain possession of the debtor's primary residence*," the deduction provided for under § 707(b)(2)(A)(iii)(II)

does not apply to the present Debtor's case. 11 U.S.C. § 707(b)(2)(A)(iii). Whether a creditor is a secured creditor for purposes of the reference in § 1325(b)(3) to § 707(b)(2)'s average monthly payments contractually due to secured creditors is made as of the effective date of the plan. *In re Sackett,* 374 B.R. 70, 72–3 (Bankr.W.D.N.Y.2007). If the collateral is being surrendered pursuant to the Chapter 13 plan, the creditor is not treated as a secured creditor as of the effective date of the plan. *Id.* "The term 'contractually due' ... does not carry the same meaning in a chapter 13 case as in a chapter 7 case. The chapter 13 plan constitutes a new agreement between the debtor and each secured creditor. A debtor's obligations under the plan are substituted for his or her obligations under the original contract with each secured creditor," *In re McPherson,* 350 B.R. 38, 46 (Bankr.W.D.Va.2006).

 "When Congress amends the bankruptcy laws, it does not write 'on a clean slate'." *Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992)(*citing Emil v. Hanley,* 318 U.S. 515, 521, 63 S.Ct. 687, 87 L.Ed. 954 (1943)). "Furthermore, this Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." *Id.* (*citing United Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 380, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)). Although BAPCPA implemented numerous changes to the Bankruptcy Code, the fundamental purposes of a Chapter 13 bankruptcy remained intact. As explained in the Congressional Committee Notes,

> The purpose of chapter 13 is to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period. In some cases, the plan will call for full repayment. In others, it may offer creditors a percentage of their claims in full settlement.
>
> . . .
>
> The benefit to the debtor of developing a plan of repayment under chapter 13, rather than opting for liquidation under chapter 7, is that it permits the debtor to protect his assets. In a liquidation case, the debtor must surrender his nonexempt assets for liquidation and sale by the trustee. Under chapter 13, the debtor may retain his property by agreeing to repay his creditors.

H.R.Rep. No. 95–595, at 1 (1977), U.S.Code Cong. & Admin.News 1978, p. 5863. A Chapter 13 petition has always been completely voluntary. *Id.* These concepts were affirmed when Congress debated the changes proposed under BAPCPA. H.R. Rep. No. 109–31 (2005), U.S.Code Cong. & Admin.News 2005, p. 88. The "unconditional discharge in Chapter 7 contrasts with the conditional discharge provisions of Chapter 13." *Id.* In order to keep certain property, a Chapter 13 debtor agrees to pay creditors according to a repayment plan. If a Chapter 13 debtor is not keeping the property, no future payments are made, following the petition date. Herein, the Debtor has surrendered the Property and no future payments will be made pursuant to the Plan.

\* \* \* \* \* \*

Accordingly, the subject proposed expense deduction is hereby disallowed. The Trustee's Objection to Plan Confirmation is hereby sustained. The Debtor's response in opposition is hereby overruled. This matter will proceed to a duly noticed

confirmation hearing on all other outstanding issues. Each party is to bear its respective costs.

**IT IS SO ORDERED.**