**In re Flora Stella SANCHEZ, Debtor.**

**No. 07–24231–SBB.**

United States Bankruptcy Court, D. Colorado.

Sept. 12, 2008.

N. April Norton, William R. Lambert, Denver, CO, for Standing Chapter 13 Trustee, Sally Zeman.

## MEMORANDUM OPINION AND ORDER SUSTAINING STANDING CHAPTER 13 TRUSTEE'S OBJECTION TO CONFIRMATION AND DENYING CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the Objection to Confirmation of the Debtor's Chapter 13 Plan filed on January 15, 2008 (Docket # 10) and the Response thereto filed by Flora Stella Sanchez ("Debtor") on February 5, 2008 (Docket # 12). The Court, having reviewed the pleadings and briefs filed with the Court and the within case file, makes the following findings of fact, conclusions of law, and enters the following Order.

### I. *Findings of Fact*

Debtor filed her Chapter 13 Petition, Statement of Financial Affairs, Schedules, and proposed Plan on December 6, 2007.

In the Debtor's Statement of Financial Affairs at paragraph 1, Debtor makes the following gross income disclosures:

- 2005 $56,619.00 January to October—a monthly average of $5,661.90;
- 2006 $38,205.00—a monthly average of $3,183.75; and
- 2007 year-to-date as of August 31, 2007 $45,435.96—a monthly average of $5,679.50.

The Debtor provides in Schedule I a total monthly gross income of $5,113.24. This income figure conflicts with the payment advices filed with the Court at Docket # 1, which shows that the Debtor receives $5,591.66 per month as regular pay as reflected in the September and October 2007 payment advices.

Debtor provides in her Chapter 13 Statement of Current Monthly Income and

Stephen E. Berken, Denver, CO, for Debtor.

Calculation of Commitment Period and Disposable Income ("Form 22C") [1] an average monthly gross income, or currently monthly income, of $4,752.18. Debtor's annualized current monthly income disclosed on Line 15 is $57,026.16.

Debtor discloses a household size of one. Consequently, the applicable median income in Colorado for a household of one is $42,886.00. Debtors' income exceeds the applicable median income by $14,140.16.

Debtor indicates on page one of Form 22C that "disposable income is determined under § 1325(b)(3)" and "that the 'applicable commitment period' is 5 years."

Debtor identifies in line 58 of Form 22C that monthly disposable income is zero. [2] Debtor identifies in Schedules I and J that monthly net income is $475.09. [3] According to the Debtor's October 31, 2007 payment advice, the Debtor's actual net income is $3,806.69.

Debtor lists in Schedule D a first and second mortgage and one car loan. Debtor provides in her plan that the arrearage on the first mortgage will be cured, the second mortgage will be "stripped," and the car loan will be "crammed down." As a result, there is approximately $32,555.73 of secured debt listed on Schedule D that will not be paid. Debtor lists in Schedule E no priority claims. Debtor lists in Schedule F unsecured debt totaling $22,623.18. Thus, the total unsecured debt listed in Debtor's schedules is $44,178.91. [4]

Debtor proposes in her Chapter 13 Plan a repayment period of 36 months, with $2,220.00 being paid to Class IV unsecured creditors.

## II. *Issue*

The issue before the Court is whether an "above median debtor" must propose a sixty month repayment plan if the Chapter 13 plan provides less than full repayment to all creditors, or whether an "above median debtor" may, instead, elect to propose a repayment plan of less than full debt repayment for less than sixty months.

The Court concludes that an "above median debtor" must propose a sixty month repayment plan if the Chapter 13 plan provides for less that full repayment to all creditors.

## III. *Discussion*

### A. 11 U.S.C. § 1325

11 U.S.C. § 1325(b)(1) provides:

If the trustee or the holder of an allowed unsecured claim objects to confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan ... the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(4) defines the term "applicable commitment period" as follows:

(A) subject to subparagraph (B), shall be—

(i) 3 years; or

(ii) not less than 5 years, if the current monthly income of the debtor and

---

**1.** The Official Form in use at the time that the Debtors filed for relief under Chapter 13 was Official Form 22C with an effective date of April, 2007.

**2.** Current monthly income of $4,752.18 minus deductions allowed under § 707(b)(2) of $5,176.40 is actually a negative $424.22.

**3.** This figure, $475.09, is derived from Schedule I net income of $3,796.09 less Schedule J monthly expenses of $3,321.00.

**4.** This sum, $44,178.91 consists of $32,555.73 plus $11,623.18.

the debtor's spouse combined, when multiplied by 12, is not less than—

(I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

(II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

(III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $575 per month for each individual in excess of 4; and

(B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

## B. The "Applicable Commitment Period"[5]

 The majority of the cases published on this issue have concluded that the determination of "above median" status requires a debtor to commit all projected disposable income for the benefit of unsecured creditors over the period of not less than 5 years.[6] This viewpoint is consistent with the plain language of 11 U.S.C. § 1325(b). As the Supreme Court held in *United States v. Ron Pair Enterprises, Inc.,*

> The task of resolving the dispute over the meaning of [a Bankruptcy Code section] begins where all such inquires must begin: with the language of the statute itself ... where ... the statute's language is plain, "the sole function of the courts is to enforce it according to its terms."[7]

 "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'"[8] This is not one of those rare cases. However, where strict application of the plain language would result in manifest injustice, judicial discretion must be exercised.[9] Again, in this case, a strict

---

**5.** The predominant issue in this case is the question of the "applicable commitment period" for an "above median" debtor. Unlike the Tenth Circuit BAP opinion in *In re Lanning*, 380 B.R. 17 (10th Cir. BAP 2007), the parties here seem to agree that the Form 22C—Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, is a starting point. As is discussed below, in Section III.C., the question of whether Form 22C was a starting point or a point from which the "applicable commitment period" would be fixed was raised, in part, by the Debtor's supplemental argument and the separate Standing Chapter 13 Trustee's Amended Supplemental Brief filed on June 30, 2008 (Docket # 33) and the Trustee's analysis of *In re Kagenveama*, 527 F.3d 990 (9th Cir.2008), *amended* 541 F.3d 868 (9th Cir.2008).

**6.** *In re Beasley*, 342 B.R. 280, 284 (Bankr. C.D.Ill.2006) (court determined that if the debtor's pre-petition income, as averaged over six (6) months prior to filing, is above the applicable median income level, the "debtor must accomplish a five (5) year commitment period.") and *In re Casey*, 356 B.R. 519, 526 (Bankr.E.D.Wash.2006) ("If unsecured claims are not to be paid in full, the plan must have a length of three (3) years for below median income debtors and not less than five (5) years for above median income.").

**7.** 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

**8.** 489 U.S. at 242, 109 S.Ct. at 1031.

**9.** *Holy Trinity Church v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892).

application of the plain language does not result in manifest injustice.

■■■ As the Court in *In re Casey* noted:

> [There is] no ambiguity in § 1325(b)(4). Once the amount of projected disposable income has been determined, whether that be by sole reliance on Form B22C or the Schedule I and J or some other calculation, (b)(1) simply states that it must be used to pay unsecured claims for an "applicable commitment period," which, in accordance with (b)(4), is either three (3) years or five (5) years. Subpart (b)(4) makes no reference to any monetary analysis to be used in determining the length of the plan, but refers to a measurement of time. It is irrelevant whether the projected disposable income is zero or $1,000 or some other amount. If unsecured claims are not to be paid in full, the plan must have a length of three (3) years for below median income debtors and not less than five (5) years for above median income.[10]

This Court agrees with *Casey* and concludes that the rendering of a five (5) year required repayment period for an above median debtor is not absurd, but is, instead consistent with the language of the statute. That is, the "applicable commitment period" is not less than five (5) years if the debtor is above the median income level.

### C. *In re Kagenveama*

On June 5, 2008, the United States Court of Appeals for the Ninth Circuit issued an opinion in *In re Kagenveama*.[11] This opinion was amended on June 23, 2008 to insert a citation.[12] In short the opinion held as follows:

(1) The term "projected disposable income" is debtor's "disposable income," calculated by the average of what debtor earned over the six months preceding the petition date, projected over debtor's "applicable commitment period."

(2) The term "applicable commitment period" is a temporal concept—a "snapshot"—and not merely a multiplier.

(3) Debtor who had no "projected disposable income" also had no "applicable commitment period."

The import of this decision—*if the reasoning of the Ninth Circuit is adopted by this Court*—is that the within Debtor would have no "applicable commitment period" and therefore the Chapter 13 Plan would be confirmable under the facts and circumstances of this case.

The court in *Kagenveama* made this analysis:

> Section 1325 uses the term "disposable income" only in two places— § 1325(b)(1)(B) ("projected disposable income") and § 1325(b)(2) (defining "disposable income"). The substitution of any data not covered by the § 1325(b)(2) definition in the "projected disposable income" calculation would render as surplusage the definition of "disposable income" found in § 1325(b)(2). There can be no reason for § 1325(b)(2) to exist other than to define the term "disposable income" as used in § 1325(b)(1)(B). "If disposable income' is not linked to 'projected disposable income' then it is just a floating definition with no apparent purpose." *In re Alexander*, 344

---

**10.** 356 B.R. 519, 527 (Bankr.E.D.Wash.2006).

**11.** 527 F.3d 990 (9th Cir.2008).

**12.** 541 F.3d 868 (9th Cir.2008).

B.R. 742, 749 (Bankr.E.D.N.C.2006). The plain meaning of the word "projected" in and of itself, does not provide a basis for including other data in the calculation because "projected" is simply a modifier of the defined term "disposable income." Therefore, to give meaning to every word of § 1325(b), "disposable income," as defined in § 1325(b)(2) must be "projected" in order to derive "projected disposable income."

Furthermore, "projected disposable income" has been linked to the "disposable income" calculation before BAPCPA. Any change in how "projected disposable income" is calculated only reflects the changes dictated by the new "disposable income" calculation; it does not change the relationship of "projected disposable income" to "disposable income." Pre–BAPCPA, "projected disposable income" was determined by taking the debtor's "disposable income," under § 1325(b)(2)(A) & (B), and projecting that amount over the "applicable commitment period." *In re Anderson*, 21 F.3d 355, 357 (9th Cir.1994).[13]

The court went on to conclude that:

the plain language of § 1325(b) links "disposable income" to "projected disposable income," and we are bound by the definition of "disposable income" provided in § 1325(b)(2)(B). Even before the enactment of BAPCPA, we held that "projected" modified "disposable income," thus foreclosing the argument that "projected disposable income" has no relationship to "disposable income." *Anderson*, 21 F.3d at 357. In light of *Anderson*, we cannot read the word "projected" to be synonymous with the word "anticipated" in this context. *See id.* "Those courts that argue Congress

intended something more when it referred to 'projected disposable income' in § 1325(b)(1)(B) fail to address the fact that Congress defined 'disposable income' subsequently in § 1325(b)(2)." *In re Miller*, 361 B.R. 224, 235 (Bankr. N.D.Ala.2007) (*citing In re Rotunda*, 349 B.R. 324, 331 (Bankr.N.D.N.Y. 2006)). To get from the statutorily defined "disposable income" to "projected disposable income," "one simply takes the calculation ... and does the math." *In re Alexander*, 344 B.R. at 749.[14]

After the ruling in *Kagenveama*, the United States Bankruptcy Court for the Southern District of Texas, Houston Division further analyzed the Ninth Circuit's ruling in *In re Gonzalez*.[15] This Court concurs with the rationale contained in *Gonzalez*. The *Gonzalez* Court made the following assessment:

The "snapshot" view [as set out in *Kagenveama*] minimizes language throughout § 1325(b), ignores § 707(b)'s variant role in chapter 7 versus chapter 13 cases, and overlooks the Supreme Court's direction to consider future circumstances when fashioning present remedies. *See Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007), *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004).

The "snapshot" view ignores the independent language contained in § 1325(b)(2)(A)-(B) that requires allowed amounts to be paid on one of the four allowed expenditures. The "snapshot" view also erases any meaning from § 1325(b)(1)'s use of "projected." Section 1325(b) contains numerous future-oriented words suggesting that "project" means more than to simply multiply a

---

**13.** 541 F.3d at 871–74.

**14.** *Id.* at 874–75.

**15.** 388 B.R. 292 (Bankr.S.D.Tex.2008).

snapshot amount by a number of months. Section 1325(b)(1)(B) requires a debtor's plan to commit all the debtor's *"projected* disposable income." Section 1325(b)(1) requires the court to consider the debtor's disposable income *"to be* expended" and as of the *"effective date* of the plan." Section 1325(b)(2) requires the court to calculate a projected disposable income for below-median debtors based on payments *"to be* expended." Section 1325(b)(2)(A)(i) allows debtors to include a domestic support obligation that "first becomes payable *after the date the petition is filed."* Section 1325(b)(2)(A)(ii) allows debtors to expense charitable contributions "not to exceed 15% of gross income of the debtor *for the year in which the contributions are made."* Section 1325(b)(3) allows above-median debtors to include 707(b)(2) expenses that are *"to be* expended." The theme of § 1325(b)(1)'s language directs courts to the future.

The "snapshot" view also overlooks § 707(b)(2)'s different applications in chapter 7 and chapter 13 cases. In a chapter 7 case, § 707(b)(2) serves as the "means test" used to determine whether a debtor should be allowed to file a chapter 7 rather than a chapter 13 case. 11 U.S.C. § 707(b)(2). To make this static decision, courts must look at the debtor's circumstances as of a particular moment in time. The Court does not disagree with the "snapshot" view in the chapter 7 context. However, in a chapter 13 case, § 707(b)(2) serves as one component in a detailed formula used to determine how much a debtor must pay through their chapter 13 plan. In the chapter 13 context, the decision is not

static. A debtor does not make only a single payment under their (sic) chapter 13 plan. The debtor, if successful, makes 60 payments extending into the future for five years. A test used to make a decision for today can not be applied in the same way to make a decision for 60 different tomorrows. A chapter 13 case is a saga, not a snapshot.[16]

Another case following *Kagenveama,* arises out of the Bankruptcy Court for the District of Kansas, *In re DeThample.*[17] In that case, the Honorable Robert E. Nugent, Chief Judge, concluded:

[T]he Ninth Circuit's *Kagenveama* opinion only looks within the confines of § 1325(b) for its analysis and nowhere acknowledges the inherent contradiction between "projecting" disposable income "to be received in the applicable commitment period" and using the backward-looking "current monthly income" figure as a starting point. It also ignores the prefatory language in § 1325(b)(1) that requires these calculations to be made "as of the effective date of the plan" as opposed to determining what was received during the six-month period before the case was filed, as the definitions of CMI and disposable income contemplate. *Lanning* [ [18]] recognizes these contradictions and attempts to resolve them in a manner that not only gives all of these terms meaning, but also result in above-median debtors being required to pay what they actually can pay or being allowed to not pay what they cannot. This is entirely consistent with the policy and legislative history of BAPC-

---

16. *Id.* at 304–05 (emphasis in original).

17. 390 B.R. 716 (Bankr.D.Kan.2008).

18. 380 B.R. 17 (10th Cir. BAP 2007). This Court notes that *Lanning* is presently before the Tenth Circuit Court of Appeals.

PA as well as the policy of the 1978 Act.[19]

The Court finds the reasoning of the *Gonzalez* and *DeThample* cases to be persuasive. This Court concludes that, while the analysis starts with Form 22C, the schedules and other features of a case have significance and meaning in ascertaining the "applicable commitment period."[20]

### D. Compatibility of 11 U.S.C. § 1322(d) with 11 U.S.C. § 1325(b)(4)

The debtor argues that "section 1322(d) would be entirely superfluous" if courts looked to 11 U.S.C. § 1325(b)(4) for determination of mandated plan length. This Court does not agree. 11 U.S.C. § 1322(d) sets out a cap for plan duration. A plan cannot exceed five (5) years. However, the plan cannot be less than five (5) years if the debtor is an "above median debtor." "The overall statutory theme often clarifies a seemingly ambiguous provision because only one of the permissible meanings [of a specific provision] produces a substantive effect that is compatible with the rest of the law."[21] 11 U.S.C. §§ 1325(b)(4) and 1322(b) are compatible.

Moreover, a strict reading of 11 U.S.C. § 1325(b)(4) is consistent with the "good faith" requirement of 11 U.S.C. § 1325(a)(3). The "[e]ssential inquiry, in deciding whether Chapter 13 plan has been proposed in 'good faith,' as required for confirmation, is whether debtor is trying to pay creditors to the reasonable limit of his ability, or whether he is trying to thwart them."[22] In this case, Debtor's Chapter 13 Plan proposes repayment of $2,220.00 to general unsecured creditors over a thirty-six (36) month duration. The total disclosed unsecured debt was scheduled by the Debtor at $44,178.91. The Chapter 13 Plan is not proposed in "good faith" as required by 11 U.S.C. § 1325(a)(3) as it is not a sixty (60) month plan and only a partial repayment of unsecured creditors is proposed.

### IV. *Order*

IT IS THEREFORE ORDERED that the Standing Chapter 13 Trustee's Objection to confirmation is SUSTAINED and the Debtor's Chapter 13 Plan filed December 6, 2007 (Docket # 2) is not confirmed.

IT IS FURTHER ORDERED that:

1. The Debtor shall file, on or before September 25, 2008, an amended Chapter 13 plan along with a notice to all creditors and interested parties which (a) establishes the deadline of October 19, 2008 for the filing of objections to confirmation, (b) schedules a hearing regarding plan confirmation for November 5, 2008 at 2:30 p.m. in Courtroom E, U.S. Custom House, 721 19th Street, Denver, Colorado 80202 and (c) establishes the deadline of November 3, 2008, for the filing and exchanging of lists of witnesses and exhibits. Failure to file the amended Chapter 13 plan, notice and certificate of service on or before September 25, 2008 shall establish cause for dismissal of the within case.

2. If confirmation is not possible at the time of the continued hearing set for November 5, 2008, the Court will entertain

**19.** 390 B.R. at 724–25.

**20.** *See, e.g., In re Jass,* 340 B.R. 411 (Bankr. D.Utah 2006).

**21.** *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988).

**22.** *In re Schaitz,* 913 F.2d 452, 453 (7th Cir. 1990).

requests for dismissal if the Debtor is not current on payments to the Standing Chapter 13 Trustee.

3. If the matter set for hearing involves a contested factual issue, any party intending to introduce any exhibits or call any witnesses at the scheduled hearing shall, on or before November 3, 2008, (a) deliver to opposing counsel, a list and photocopies of the proposed exhibits (premarked for identification) and a schedule of witnesses who may be called as well as a schedule of witnesses who will be called, and (b) file with the Court only the list of exhibits and schedules of witnesses who may or will be called. The original plus one copy of each exhibit shall be tendered to the Court at the commencement of the hearing. The copy shall be used by the Court and the original shall be used by the witness(es).

NOTICE IS FURTHER GIVEN that in the event the matter is resolved, the hearing may be vacated only upon (a) receipt of a stipulation or agreement of the parties no later than the day before the scheduled hearing, (b) filing of the Verification of Confirmable Plan, or (c) appearance by at least one of the parties at the hearing, in person or via telephone, who shall read the agreement into the record.

Counsel for the Debtor shall timely file the appropriate Verification of Confirmable Plan or Certificate re: Objection to Confirmation in accordance with T.L.B.R. 3015–1(f)(1) or (d)(3). In the event no objection to confirmation is filed with the Court, Counsel shall file the Verification of Confirmable Plan and contact the Court to ascertain whether or not the hearing shall be vacated by the Court.